UNITED STATES of America, Appellee,

v.

Douglas DEMARRIAS, Appellant.

No. 88–5065.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided June 6, 1989.

Terry L. Pechota, Rapid City, S.D., for appellant.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before ARNOLD and JOHN R. GIBSON, Circuit Judges, and ROSENBAUM,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

Douglas Demarrias appeals from his conviction on four counts of abusive sexual contact with his fourteen year old stepdaughter, in violation of 18 U.S.C. § 2244(a)(1) and (3). Demarrias contends that the district court[1] was without jurisdiction to try and sentence him for these offenses. He also argues that a lesser included offense instruction was improperly given. Additionally, he claims that a United States Magistrate was improperly allowed to answer a jury question during deliberations, and calls into question several evidentiary rulings. Finally, he challenges the sufficiency of the evidence supporting his convictions. We affirm the judgment of the district court.

Demarrias' molestation of his stepdaughter apparently began when she was twelve, and continued over a two year period. This finally became known when the girl told her school principal that she had been "hurt at home." Local authorities held an investigation, which culminated with Demarrias being indicted for two counts of aggravated sexual abuse, 18 U.S.C. § 2241(a), and two counts of sexual abuse

of a minor, 18 U.S.C. § 2243(a). At trial the government relied on the testimony of the girl and her principal, as well as two rebuttal witnesses. Demarrias took the stand in his own behalf, denying the incidents, and attempting to demonstrate fabrication. The jury returned a verdict of guilty on four counts of abusive sexual contact, 18 U.S.C. § 2244, a lesser included offense of each indictment count. The district court sentenced Demarrias to a total of eighteen months imprisonment, and required him to pay $150 to the special victim assistance fund.

I.

Demarrias argues that the district court had no jurisdiction to try and sentence him for abusive sexual contact, relying on two distinct arguments. First, he claims that Congress never intended for the jurisdictional statute governing offenses committed within Indian country to incorporate chapter 109A, 18 U.S.C. §§ 2241–45, the general sexual abuse portion of the criminal code. We are not persuaded. The Sexual Abuse Act of 1986, Pub.L. No. 99–654, 100 Stat. 3660, 3663, specifically amended 18 U.S.C. § 1153 to encompass chapter 109A felonies.[2] "Subsection (a)(5) amends the Major Crimes Act to ensure that there is Federal jurisdiction over felonies under chapter 109A committed by Indians in Indian country." H.R. Rep. No. 99–594, 99th Cong., 2d Sess., at 20, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6186, 6200. This language is sufficiently clear to refute Demarrias' argument.

Demarrias further contends that even if Congress intended to allow jurisdiction over chapter 109A felonies, it did not

---

[*] The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

2. Section 1153(a) now provides that:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely murder,

manslaughter, kidnapping, maiming, *a felony under chapter 109A,* incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. (Emphasis added).

authorize district courts to entertain any proceedings involving chapter 109A misdemeanors. Since the jury found Demarrias guilty of only lesser included misdemeanors to the original felony charges, he argues that the district court should not have sentenced him on those convictions. This court has previously stated, however, that jurisdiction over lesser included offenses is implicit in section 1153. *See Felicia v. United States,* 495 F.2d 353, 355 (8th Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). Thus, the district court acted within its jurisidction when sentencing Demarrias.

## II.

■ Demarrias next contends that the jury was improperly allowed to convict him of abusive sexual contact, because that crime is not a lesser included offense of either aggravated sexual abuse or sexual abuse of a minor. Generally, the elements of a lesser included offense must be a subset of the elements of the greater offense. *See Schmuck v. United States,* — U.S. —, —, 109 S.Ct. 1443, 1451, 103 L.Ed.2d 734 (1989); *United States v. Ashby,* 771 F.2d 392, 394 (8th Cir.1985). Demarrias charges that the lesser "sexual contact" crimes contain an intent element that is absent from the more serious "sexual act" crimes originally charged by the Indictment.[3] Thus, the question becomes whether it is possible to commit a "sexual act" without engaging in "sexual contact."

Examining the structure of chapter 109A, we conclude that abusive sexual contact is a lesser included offense of both aggravated sexual abuse and sexual abuse of a minor. The intent language which Demarrias emphasizes appears in the definitions of both "sexual act" and "sexual contact." Charter 109A encompasses some types of contact which by their nature are sexual acts, and therefore require no showing of intent. Other types of contact, especially with the hand or an object, may be made for purposes other than sex. For example, a doctor administering medication to a genital area is not acting for the purpose of sexual gratification, and his conduct should not fall within chapter 109A. A distinction must therefore be made for contact that falls into this category. That distinction is the requirement that the actor's intent be to gratify, harass, abuse, or degrade.

18 U.S.C. § 2245(2) incorporates this reasoning into the definition of sexual act. Subsections (A) and (B) describe conduct which needs no explicit intent element, because one who engages in such contact inherently intends to do so for sexual purposes. Subsection (C), however, covers conduct that is not inherently sexual, but that may be for a sexual purpose, depending upon the intent of the actor. Demarrias' claim that intent is irrelevant for determining whether a sexual act has taken place is therefore without merit. Each subsection considers intent, but (A) and (B) imply it from the nature of the contact. A sexual act necessarily requires a sexual contact, since none of the acts described by section 2245(2) can be accomplished without an intentional touching with sexual intent.

Moreover, 18 U.S.C. § 2244(a) itself lends additional support to this construction of the statute. This section incorporates the previous sections of chapter 109A, replaces the words "sexual act" with "sexual contact," and prescribes lesser penalties than for the original offenses. The clear intent

---

**3.** 18 U.S.C. § 2245(2) defines the term "sexual act" to mean:

(A) contact between the penis and the vulva or the penis and the anus, and for the purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person * * *.

"Sexual contact," on the other hand, is defined by 18 U.S.C. § 2245(3) to mean:

the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person * * *.

of Congress seems to have been to make this the general "lesser included offenses" provision for chapter 109A, expanding the range of prohibited conduct. Therefore, the district court did not err by allowing the jury to consider the lesser included offenses.[4]

### III.

■ Demarrias also takes exception to the role played by a United States Magistrate at his trial. After the jury began deliberations, the district judge left the city, with the acquiescence of both parties, leaving the magistrate to accept the jury's verdict. The district judge gave the magistrate specific instructions to telephone if the jury had any questions, so that the judge could dictate the magistrate's response. The jury did ask a question during deliberations, and the magistrate signed a response. Both parties conceded at oral argument that the district judge's instructions were followed. Demarrias argues that Congress never intended for district judges to assign matters such as these to magistrates, and that in any event such a delegation violates due process and Article III of the constitution.

The Federal Magistrates Act provides, in part, that "A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3) (1982). This court, however, has previously recognized limits to Congress' permission to delegate judicial tasks to magistrates. In *United States v. Trice*, 864 F.2d 1421 (8th Cir.1988), for example, we construed the Act not to authorize a magistrate to perform jury voir dire.[5] Since voir dire is a "traditional adjudicatory duty," we felt that Congress meant to keep that power with the district courts. This situation, by contrast, involves a magistrate simply be-

ing left to tend a deliberating jury, and to accept its verdict, allowing the district judge in a large district to go elsewhere to perform other work. Insofar as the magistrate communicated with the jury, he did so simply as an intermediary, taking the jury's question, contacting the district judge, and then conveying the answer to the jury. Under these circumstances, we believe that the delegation was properly authorized by Congress.

Nor do we find any constitutional problems with this delegation. It is difficult to understand how Demarrias' due process rights were infringed upon, since the district judge maintained full control of the proceedings by telephone. *See United States v. Raddatz*, 447 U.S. 667, 680–81, 100 S.Ct. 2406, 2414–15, 65 L.Ed.2d 424 (1980) (due process not offended when ultimate control remains with district judge). Demarrias' Article III argument fails for similar reasons. If a non-Article III judge may constitutionally make preliminary findings of fact and credibility in pretrial motions, *see Raddatz*, 447 U.S. at 683–84, 100 S.Ct. at 2416–17, or preside over habeas corpus proceedings, *see Swain v. Pressley*, 430 U.S. 372, 383, 97 S.Ct. 1224, 1230, 51 L.Ed.2d 411 (1977), then it seems clear that a magistrate may simply relay a district judge's instructions to the jury or to the parties.

### IV.

Finally, Demarrias calls into question two evidentiary rulings by the district court. He argues that two individuals were improperly allowed to testify as to what the victim told them, and that the government was allowed to use an unduly inflammatory statement previously made by the victim as the basis for a leading question. Demarrias preserved error on

---

**4.** Demarrias also argues that the district court failed to instruct the jury that it must find Demarrias was an Indian and the crime was committed in Indian country before it could find guilt on the lesser included offenses. Having searched the record, we conclude that the jury was properly instructed, and that the parties stipulated the facts necessary to trigger the district court's Indian jurisdiction.

**5.** This construction is the subject of a circuit split, and is currently under Supreme Court review. *See United States v. Garcia*, 848 F.2d 1324 (2d Cir.1988), *cert. granted sub nom. Gomez v. United States*, —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 773 (1989).

neither point, however, and we therefore review under a plain error standard. *See United States v. Ferguson*, 776 F.2d 217, 224 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986).

■ Demarrias' first claim is that testimony concerning prior statements of the victim constituted impermissible hearsay. The government argues, however, that the statements were offered to rebut implied claim of fabrication, and were therefore admissible under Federal Rule of Evidence 801(d)(1)(B). Although the record seems to contain ample support for the government's position, we need not reach this issue. The district court did not admit the statements as substantive evidence, but instead gave a limiting instruction that restricted the jury to considering the statements only with regard to the victim's credibility. Thus limited, the statements were not hearsay. *See* Fed.R.Evid. 801(c) (statement only hearsay if offered to prove the truth of the matter asserted).

■ The second claim involves a government question to the victim that in effect read a prior statement into the record. Faced with the understandable reluctance of the victim to testify in open court, the government read the contents of the prior statement and then asked the victim, "Did you write that?" The victim replied affirmatively. Although leading questions are normally prohibited during direct examination, *see* Fed.R.Evid. 611(c), district courts have the discretion to depart from this routine, particularly when the witness is a young victim. *See United States v. Littlewind*, 551 F.2d 244, 245 (8th Cir. 1977). Under these circumstances, we believe that the district court acted properly in allowing the question to have been stated in a leading form, since the victim exhibited a reluctance to testify in other forms. Nor do we think that the statement was so prejudicial as to mandate exclusion under Rule 403. The balancing required under that rule rests with the sound discretion of the district court, and we find no plain error in its decision.

V.

■ Demarrias' final claim is that the government failed to establish the element of force in the aggravated sexual abuse charges, and for two of the subsequent convictions for abusive sexual contact. When reviewing a jury verdict of guilty, we view the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences. *See United States v. Peterson*, 867 F.2d 1110, 1115 (8th Cir.1989). We find ample support in the record to infer the use of force, particularly from the testimony of the victim herself that she was overcome by the larger and stronger Demarrias and that he caused her pain. The jury was entitled to judge her credibility, and we will not overturn that determination.

We affirm the judgment of the district court.