UNITED STATES of America, Appellee,

v.

Eric Tarrell JOHNSON, Appellant.

UNITED STATES of America, Appellee,

v.

Jacqueline Marie THOMAS, Appellant.

UNITED STATES of America, Appellee,

v.

George Edward WOODARDS, Appellant.

UNITED STATES of America, Appellee,

v.

Reginald WOODARDS, Appellant.

Nos. 91–2500, 91–2501, 91–
2508 and 91–2737.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1992.

Decided May 1, 1992.

Robert Gerard Malone, St. Paul, Minn., argued, for appellant Eric Tarrell Johnson.

Virginia G. Villa, Minneapolis, Minn., argued, for appellant Jacqueline Marie Thomas.

Michael Saeger, St. Paul, Minn., argued, for appellant George Edward Woodards.

Oral argument was waived in No. 91–2737.

Francis John Magill, Minneapolis, Minn., argued, for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

BOWMAN, Circuit Judge.

Appellants Reginald Woodards, Jacqueline Thomas, and Eric Johnson were convicted in District Court[1] of conspiracy to ,commit bank robbery, attempted bank robbery, and use of a firearm during a crime of violence.[2] Appellant George Woodards was convicted of conspiracy to commit bank robbery. All appeal their convictions. George Woodards and Johnson also raise sentencing issues. We affirm.

On November 7, 1990, Reginald Woodards, Thomas, Johnson, and their cohorts,[3]

---

1. The Honorable Diana E. Murphy; United States District Judge for the District of Minnesota.

2. Reginald Woodards and Thomas were each convicted on one count of conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 371, 2113(a) (1988); two counts of aiding and abetting attempted bank robbery, in violation of 18 U.S.C. §§ 2, 2113(a) (1988); and one count of aiding and abetting the use of a firearm during

a crime of violence, in violation of 18 U.S.C. §§ 2, 371, 924(c)(1), 2113(a) (1988). Johnson was convicted of one count of conspiracy to commit bank robbery, one count of aiding and abetting attempted bank robbery, and one count of aiding and abetting the use of a firearm during a crime of violence.

3. Three juveniles accompanied the group from Milwaukee on their trip to Minnesota and participated in the attempted bank robberies.

including Tracey Jefferson,[4] arrived at George Woodards' house in Brooklyn Park, Minnesota after driving from Milwaukee in a van.[5] Jefferson testified that Reginald Woodards told him that they were going to Minnesota to get "banked up" and asked for Jefferson's help in stealing two vehicles. Trial Transcript, vol. II at 65. Shortly after George arrived home from work that morning, he, his brother Reginald, Thomas, and Jefferson left the house in George's car, with George driving. Jefferson testified that the group drove around town in preparation for the bank robberies. The car stopped at a jewelry store, which Thomas entered alone and returned from empty-handed after about five minutes. Jefferson testified that Thomas told the group, " 'Ain't nothing in there.' " Trial Transcript, vol. I at 10. The group then proceeded to a parking lot across the street from the Twin City Federal Savings and Loan ("TCF"), whereupon Thomas got out of the car and went into TCF. Jefferson testified that Thomas went into the bank to check the bank's size and look for cameras and guards. The group then drove past another savings and loan institution before returning to George's home.

An hour later, the same people again left in George's car, with George as the driver. The car stopped at a drug store, where Thomas and Reginald Woodards were observed buying some items, which Jefferson said were nylon stockings and yellow rubber gloves. The group then drove to a store where Reginald Woodards and Jefferson were observed purchasing a screwdriver, which Jefferson testified was to help him steal two cars. Next, the group returned to TCF and drove around the block before proceeding to yet another financial institution, where the car parked and an unidentified occupant of the car got out of the vehicle. The group then went back to TCF, where Thomas got out of the car and entered the bank for about a minute. The

group next went to First National Bank Anoka ("FNBA"), across the street from TCF, and pulled up to the front of the building and stopped for approximately one minute before returning to George's home.[6] During this drive, Reginald Woodards selected TCF and FNBA as the two banks to be robbed, according to Jefferson. That night, Jefferson testified, Reginald Woodards planned the robberies and gave out assignments.

The next morning, November 8, George Woodards drove Jefferson and a juvenile into Minneapolis. George let the two out of his car and drove up and down the street while the two stole a set of license plates from a car. The threesome proceeded to a parking lot, where Jefferson and the juvenile walked up and down the rows of cars before returning to George's car. The trio drove to another parking lot, where Jefferson and the juvenile broke into and stole a vehicle. The two followed George to a different location, where Jefferson stole another vehicle. The three then returned to George's home, each driving a separate vehicle (the two stolen ones and George's car). Jefferson put the stolen license plates on the van, under directions from Reginald Woodards.

Ten minutes later, the entire group left the house in George's car, the van, and the two stolen vehicles, with George leading the way. The caravan proceeded to the intersection where TCF and FNBA are located. The stolen vehicle containing Jefferson and two juveniles pulled into the FNBA parking lot and changed parking locations. When the vehicle parked the second time, directly in front of the FNBA door, the three occupants were arrested. Jefferson was in the driver's seat, wearing a stocking cap. The two juveniles were wearing nylon stockings and stocking caps on their heads. One juvenile was wearing yellow rubber gloves; identical gloves were

---

4. At the trial, Jefferson testified for the government.

5. The group was under surveillance from the time they left Milwaukee until their arrest on November 8. Several law enforcement officials testified in detail about the group's movements.

6. After inspecting one bank that she visited, Thomas told the group that "it was too big." Trial Transcript, vol. I at 12.

on the seat next to the other juvenile. One juvenile was wearing a holster with a loaded pistol, owned by Thomas, next to him on the seat. A loaded shotgun was found under the seat of the other juvenile. Jefferson testified that they were at the bank "[t]o rob it." Trial Transcript, vol. I at 23.

Meanwhile, the other stolen vehicle pulled into TCF's parking lot. The vehicle circled the building three times, each time stopping near the front door. At least five different law enforcement vehicles were in the close vicinity, watching the vehicle. On the vehicle's second stop at the front door, both the driver's side door and the passenger's side door were opened and then closed. On the third go-round, the group in the stolen vehicle looked directly at two federal agents parked in the parking lot. The stolen vehicle then left the parking lot, drove away into a traffic jam caused by the arrests of Reginald Woodards (in the van) and George Woodards (in his car), turned on to a side street, and then abandoned their stolen vehicle. Thomas was arrested immediately. Johnson and a juvenile, both wearing hats and yellow rubber gloves, tried to flee. While being chased, the juvenile threw away a loaded shotgun. He was wearing a nylon stocking on his head when caught and arrested. Johnson was also caught and arrested after a chase. A pistol was found in the path where he had run. Testimony at trial indicated that two of the weapons found in these arrests were purchased by an acquaintance of Reginald Woodards and given to him immediately after purchase.

On appeal, the appellants raise a number of issues. Essentially, they boil down to the following arguments: 1) George Woodar⁻ʿ. claims he should have been tried separately; 2) conspiracy to commit bank robbery is not a crime of violence sufficient to support a firearm conviction pursuant to 18 U.S.C. § 924(c) (1988); 3) the evidence is insufficient to support convictions for conspiracy, aiding and abetting attempted bank robbery, and attempted bank robbery; 4) the verdict should not have been taken by a magistrate judge; 5) George Woodards was sentenced improperly; and 6) Johnson was sentenced improperly.

The first two issues do not merit much discussion. We must affirm a trial court's ruling on a severance motion unless an abuse of discretion causing clear prejudice is shown. *United States v. Kindle,* 925 F.2d 272, 277 (8th Cir.1991). Generally, in conspiracy cases the alleged co-conspirators should be tried together. *United States v. Pou,* 953 F.2d 363, 368 (8th Cir. 1992). George Woodards has failed to show that he was prejudiced by the District Court's denial of his severance motion. He claims that the guilt of the other appellants "rubbed off" onto him, but does not offer any evidence of this. Indeed, the jury convicted him only of conspiracy to commit bank robbery, while acquitting him of three other charges on which his co-defendants were found guilty. Thus, it is clear that the jury was able to distinguish evidence implicating George Woodards from other evidence implicating only his co-defendants. *Cf. United States v. Pecina,* 956 F.2d 186, 188 (8th Cir.1992) (a co-conspirator's relatively limited involvement in the conspiracy does not warrant severance). The District Court did not abuse its discretion in denying his motion to sever.

Thomas, Johnson, and Reginald Woodards all claim that their convictions for using a firearm while attempting to commit a crime of violence must be overturned, as the underlying predicate crime listed in the indictment (conspiracy to commit bank robbery) is not a crime of violence. We disagree, being persuaded by our recent decision in *United States v. Juvenile Male,* 923 F.2d 614, 620 (8th Cir. 1991), which reached the well-reasoned conclusion (albeit in dictum) that a conspiracy to commit a crime of violence is itself a violent crime. *See United States v. DiSomma,* 951 F.2d 494, 496 (2nd Cir.1991) ("conspiracy to commit robbery[ ] is a crime of violence"); *see also United States v. Cruz,* 805 F.2d 1464, 1474 n. 11 (11th Cir.1986) (conspiracy to commit a crime of violence creates a substantial risk of violence and thus is a crime of violence), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 *and* 482 U.S. 930, 107 S.Ct.

3215, 96 L.Ed.2d 702 (1987); *cf. United States v. Luskin*, 926 F.2d 372, 379 (4th Cir.) (travelling in interstate commerce with the intent to commit murder is a crime of violence), *cert. denied*, — U.S. —, 112 S.Ct. 68, 116 L.Ed.2d 43 (1991). Because bank robbery is indisputably a crime of violence, conspiracy to commit bank robbery is a predicate crime that satisfies the required crime-of-violence element of section 924(c).

█ As to the sufficiency of the evidence arguments each appellant raises, the only claim that warrants any discussion relates to the attempted bank robbery convictions. The question of whether there is sufficient evidence of a substantial step taken to rob the two banks on November 8, or whether either of the two groups voluntarily abandoned their collective plan to rob the banks, is answered by the analysis established in *United States v. Crawford*, 837 F.2d 339 (8th Cir.1988) (per curiam). The acts of Jefferson and the two juveniles at FNBA, described above, "clearly amounted to more than preliminary preparation. [They] took steps directly aimed at the commission of a bank robbery and those steps corroborate the firmness of [their] criminal intent." *Id.* at 340.

█ With respect to the attempt to rob TCF, we disagree with the contention that Thomas, Johnson, and the third juvenile experienced a "foxhole conversion" and voluntarily abandoned their plan to rob TCF. "[T]he actions taken by the police, rather than the actions taken by [the would-be robbers], ended [their] robbery endeavor. Under these circumstances, [their] actions constitute a substantial step in furtherance of attempted bank robbery." *Id.* By driving to the bank with disguises and weapons, slowly circling the bank three times, and stopping once to open the doors of the vehicle, the three crossed the "shadowy line" from mere preparation to attempt. *United States v. Joyce*, 693 F.2d

838, 840 (8th Cir.1982). Viewed in the light most favorable to the government, *see United States v. Rankin*, 902 F.2d 1344, 1345 (8th Cir.1990), there is sufficient evidence that the three abandoned their plan to rob TCF only because of the presence and intervention of law enforcement officials. Accordingly, the convictions are affirmed.

█ Thomas and George Woodards next argue that the jury verdict improperly was taken by a magistrate judge,[7] instead of the trial judge. They assert that this action prejudiced them, requiring that their convictions be set aside and a new trial granted. 28 U.S.C. § 636(b)(3) (1988) provides that "[a] magistrate may be assigned such ... duties as are not inconsistent with the Constitution and laws of the United States." In *Gomez v. United States*, 490 U.S. 858, 876, 109 S.Ct. 2237, 2248, 104 L.Ed.2d 923 (1989), the Supreme Court held that it is a "basic ... right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside."

The two argue that the taking of a verdict is a critical stage of a trial, so it may not be presided over by a magistrate judge without the parties' consent. We disagree. As we said in *United States v. Demarrias*, 876 F.2d 674, 677 (8th Cir.1989), the ministerial task of taking a verdict "involves a magistrate simply being left to tend a deliberating jury, and to accept its verdict, allowing the district judge ... to go elsewhere to perform other work." Even though a defendant has a right to be present at the taking of the verdict, it is not essential that such a ministerial task, which cannot be said to affect the outcome of the trial, must be presided over by the trial judge.[8] Reading subsection 636(b)(3) in the context of section 636 as a whole, as *Gomez*, 490 U.S. at 864, 109 S.Ct. at 2241, counsels us to do, "we believe that the delegation [of the power to take a verdict] was properly authorized by Congress."

---

**7.** The Honorable J. Earl Cudd, United States Magistrate Judge for the District of Minnesota.

**8.** It cannot be seriously disputed that the taking of a jury verdict differs substantially in kind from a recognized critical stage of a trial such

as the voir dire of prospective jurors, the trial proceeding at issue in *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989).

*Demarrias,* 876 F.2d at 677.[9]  *Cf. United States v. Diaz,* 922 F.2d 998, 1002–05 (2nd Cir.1990) (28 U.S.C. § 636(b)(1)(A) (1988) authorizes a magistrate judge to preside over the selection and empaneling of a grand jury), *cert. denied,* —— U.S. ——, 111 S.Ct. 2035, 114 L.Ed.2d 119 (1991).

We turn next to George Woodards' contention that he was sentenced improperly. Woodards claims that the two-level enhancement for obstruction of justice, the three-level enhancement for the use of dangerous weapons, and the increase in his offense level for a conviction on multiple counts were assessed to him improperly. Further, he claims that he was entitled to a three-level reduction because the conspiracy of which he was convicted was not completed. We reject these arguments.

■ In reviewing the imposition of an obstruction of justice enhancement pursuant to the United States Sentencing Commission, *Guidelines Manual,* § 3C1.1 (Nov. 1990), we give great deference to the sentencing judge. *United States v. Miller,* 943 F.2d 858, 860 (8th Cir.1991). Our review of the record finds no clear error in the District Court's determination that George Woodards' testimony was blatantly untruthful and that he thus was deserving of the obstruction of justice enhancement. *See United States v. Ogbeifun,* 949 F.2d 1013, 1013–14 (8th Cir.1991) (obstruction of justice enhancement based not merely on trial testimony but on trial court's express finding of perjury). As to the enhancement given him for the use of dangerous weapons pursuant to U.S.S.G. § 2B3.1(b)(2), George claims that his acquittal on the use of a firearm charge should prohibit such an enhancement. We disagree. "[P]articulars [for sentencing purposes] need only be proved by a preponderance of the evidence," *United States v.*

*Payne,* 940 F.2d 286, 292 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991) *and* —— U.S. ——, 112 S.Ct. 1589, 118 L.Ed.2d 307 (1992), which is a lower standard than is required to prove a criminal conviction. Thus, there is no inherent contradiction in a defendant's being acquitted of using a firearm yet receiving a sentence enhancement pursuant to section 2B3.1(b)(2).[10]

■ George Woodards' challenge to the multiple-count increase in his offense level likewise does not hold up. Although he was convicted of only one count of conspiracy, U.S.S.G. § 1B1.2(d) states that "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." The conspiracy count that George Woodards was convicted of charged him with conspiring to rob both FNBA and TCF. Thus, the District Court correctly applied section 1B1.2 and increased his offense level to reflect the fact that the conspiracy of which he was a member was directed toward the robbery of two banks, not just one.

■ He also claims that he is entitled to a reduction pursuant to U.S.S.G. § 2X1.1(b)(2), which provides that with respect to a conspiracy not covered by a specific offense guideline, a three-level reduction should be given "unless the ... circumstances demonstrate that the conspirators were about to complete all [necessary] acts but for apprehension or interruption by some similar event beyond their control." As pointed out earlier in this opinion, the intended bank robberies would have been completed but for the intervention of law enforcement officials. "In such

---

**9.** *United States v. Demarrias,* 876 F.2d 674 (8th Cir.1989), is not limited by *Gomez,* as that case adopted the standard already used by our Circuit. *See Gomez,* 490 U.S. at 862 n. 7, 109 S.Ct. at 2240 n. 7 (noting our holding in *United States v. Trice,* 864 F.2d 1421 (8th Cir.1988), *cert. dismissed,* 491 U.S. 914, 109 S.Ct. 3206, 105 L.Ed.2d 714 (1989). Nor can *Demarrias* be distinguished on the grounds that the trial judge's absence in *Demarrias* was acquiesced to by the

parties, as the parties' consent was not a ground relied on in the *Demarrias* opinion.

**10.** George Woodards does not take issue with the determination that the use of firearms during a bank robbery is reasonably foreseeable, *see* U.S.S.G. § 1B1.3, comment. (n. 1), nor does he dispute that his co-conspirators were in possession of firearms when arrested.

cases, no reduction of the offense level is warranted." U.S.S.G. § 2X1.1, comment. (backg'd). The District Court correctly denied George Woodards a section 2X1.1(b)(2) reduction.

■ Finally, we address Johnson's claim that his criminal history category was calculated improperly.[11] U.S.S.G. § 4A1.1(d) requires an addition of two points to a defendant's criminal history category if "the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Johnson was given this increase because at the time of the attempted bank robberies he was under "intensive supervision" as a result of a juvenile court adjudication.[12] Johnson does not challenge the one-point increase in his criminal history category given pursuant to section 4A1.1(c) as a result of this adjudication; he disputes only the holding that the juvenile court sentence of "intensive supervision" is a criminal justice sentence.

We previously have construed broadly the terms of section 4A1.1(d), holding, for example, that "unsupervised probation" is a criminal justice sentence for purposes of a section 4A1.1(d) enhancement. *United States v. Bailey*, 955 F.2d 28, 29–30 (8th Cir.1992); *United States v. Knighten*, 919 F.2d 80, 83 (8th Cir.1990). *Cf. United States v. Frank*, 932 F.2d 700, 701 (8th Cir.1991) (a stayed adjudication with probation is included under section 4A1.1(c)). Other courts also have liberally construed section 4A1.1(d). *See United States v. Niven*, 952 F.2d 289, 292 (9th Cir.1991) (unsupervised probation is a criminal justice sentence under section 4A1.1(d)); *United States v. Hatchett*, 923 F.2d 369, 376 (5th Cir.1991) (not plain error to consider deferred adjudication probation a sentence under section 4A1.1(d)); *cf. United States v. Dillon*, 905 F.2d 1034, 1037 (7th Cir. 1990) (outstanding warrant not a criminal justice sentence under section 4A1.1(d)).

We see nothing in the text or commentary of section 4A1.2, which defines the terms of section 4A1.1, to indicate that a juvenile court sentence of "intensive supervision" should not be considered a criminal justice sentence.[13] Juvenile court sentences obviously may be considered criminal justice sentences, *see* U.S.S.G. § 4A1.2(d), and the application of section 4A1.1 is predicated only on a finding or admission of guilt. While section 4A1.1 imposes different levels of enhancement based on the severity of a sentence, it applies to all sentences where there has been a finding or admission of guilt, regardless of the sentence's severity, except for certain sentences for the specifically excluded offenses listed in section 4A1.2(c). *See Bailey*, 955 F.2d at 29 (no differentiation between supervised and unsupervised probation); *Knighten*, 919 F.2d at 82–83 (same). Johnson does not dispute that the juvenile court adjudication included a finding of guilt, nor does he dispute that it is to be counted as a criminal justice sentence pursuant to section 4A1.2. Since a criminal justice sentence under section 4A1.1(d) "means a sentence countable under § 4A1.2," U.S.S.G. § 4A1.1, comment. (n. 4), Johnson "committed the instant offense while under [a] criminal justice sentence." U.S.S.G. § 4A1.1(d). Accordingly, we conclude that the District Court correctly ap-

---

**11.** He also challenges his two-level enhancement for obstructing justice. Applying the principles previously discussed in our review of George Woodards' similar enhancement, we affirm the District Court's decision to apply the enhancement.

**12.** A fine of $50 dollars also was imposed by the juvenile court; Johnson's failure to pay resulted in a capias being issued.

**13.** The 1991 Guidelines state that a criminal justice sentence countable under U.S.S.G. § 4A1.1(d) means a sentence "having a custodial or supervisory component, although active supervision is not required for this item to apply." United States Sentencing Commission, *Guidelines Manual*, § 4A1.1, comment. (n. 4) (Nov. 1991). This statement is simply a clarification of section 4A1.1(d), U.S.S.G.App. C, amendment 381 (Nov.1991), and as such, it may be used to interpret the 1990 Guidelines. *See United States v. Renfrew*, 957 F.2d 525, 527 (8th Cir.1992) ("We may rely on a post-sentence clarifying amendment in interpreting the unamended Guideline.") (footnote omitted).

plied section 4A1.1(d) in determining Johnson's criminal history category.

We find no merit in any of the appellants' arguments. The challenged convictions and sentences are affirmed.