UNITED STATES of America

v.

James Richard KOEGEL, Defendant.

Criminal Case No. 4:10cr115.

United States District Court,
E.D. Virginia,
Newport News Division.

April 11, 2011.

Elizabeth M. Yusi, United States Attorney's Office, Norfolk, VA, Lisa Rae McKeel, United States Attorney's Office, Newport News, VA, for United States.

Larry M. Dash, Office of the Federal Public Defender, Norfolk, VA, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HENRY COKE MORGAN, JR., Senior District Judge.

This matter is before the Court following a bench trial held on March 16 and 17, 2011 on the Government's charges against the defendant, James Richard Koegel ("Defendant"), for one (1) count of aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c) (Count One); six (6) counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Counts Two through Seven); two (2) counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5) (Counts Eight and Nine); and one (1) count of possession of obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. § 1466A (Count Ten). At the conclusion of the presentation of evidence, Count Six was dismissed by the Court upon a motion by the Government. As stated at the conclusion of trial and for the reasons contained herein, the Court **FINDS** the Defendant **NOT GUILTY** on Count One for aggravated sexual abuse of a child and instead **FINDS** the Defendant **GUILTY** of the lesser included offense of abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(5). The Court also **FINDS** the Defendant **GUILTY** on Counts Two through Five and Seven through Ten. These findings of fact and conclusions of law were prepared in order to explain the Court's reasoning in this matter.

## I. FINDINGS OF FACT

Pursuant to a protective order entered on November 3, 2010, for the purposes of this opinion, the minor in this case will be referred to as "Jane Doe" or "Jane" and the minor's family will be referred to as "the W family." Doc. 14. This matter concerns the events that occurred at the W family's townhouse on February 13 and 14, 2010. At that time, the W family lived in a townhouse located within the Fort Eustis, Virginia military post. The United States government has exclusive jurisdiction over matters taking place on the post.

As of February 14, 2010, the Defendant was an active member of the United States Army stationed at Fort Eustis. Prior to February 13, 2010, the Defendant lived with his wife, Leigh Koegel, in an apartment in Yorktown, Virginia. The couple met over the internet and married on June

16, 2008 in North Carolina when the Defendant was stationed at Fort Bragg. They moved into an apartment in Yorktown on August 6, 2008 when the Defendant was assigned to Fort Eustis, and they lived there until February 13, 2010. At the apartment in Yorktown, the couple had access to the internet and both the Defendant and Leigh Koegel owned their own desktop computers. Leigh testified at trial that, while at the apartment, the Defendant showed her a video containing child pornography on his desktop computer and that the Defendant used a file sharing program called uTorrent to download the pornography. Leigh was concerned and she looked at some child predator websites, but she did not report this event to the authorities.

Meanwhile, at Fort Eustis, the Defendant served as a mechanic in the same unit as Jane Doe's father. Jane Doe's father was at Fort Eustis for almost three years, and he and the Defendant became close friends while they were with the unit. When the two were reassigned to Afghanistan, Jane's father invited the Defendant to stay with him and his family at their townhouse located on the post.

The Defendant accepted the invitation and, in anticipation of the move, the Defendant and Leigh rented a storage unit at Stor Moore where he stored some of his computer equipment (among other items). The Defendant and Leigh planned to stay at the W family's townhouse until the Defendant left for Afghanistan at which time Leigh would move back with her family in Massachusetts. On February 13, 2010, the Defendant and Leigh moved into a spare room in the W family's townhouse. Among the other items brought to the W family's townhouse, the Defendant took a box containing his desktop computer from the Yorktown apartment. At the time the Defendant and Leigh moved in, Jane Doe,

Jane's mother and father, and Jane's brother were living in the townhouse.

On February 14, 2010, the W family, Leigh, and the Defendant spent most of the day playing together with NERF™ toys. Later in the afternoon, the Defendant took Jane Doe into the spare room where he and Leigh had been staying and played games with Jane on his computer. Jane was six years old at the time. Jane testified at trial that she went back downstairs with the Defendant to play with the NERF toys, and then they both went back upstairs to the spare room alone. Jane testified that once they were alone in the room, the Defendant kissed her on the shoulder, pinched her breasts under her shirt, and touched her vagina under her underwear. Jane testified that the Defendant touched her on the inside and the outside of her "pee pee," meaning her vagina.

While this was happening, Leigh Koegel was downstairs with Jane's mother and father. Leigh was concerned about leaving the Defendant alone in a room with Jane and went to the spare room to check on them. When she entered the room, the Defendant left and went downstairs. Once Jane and Leigh were alone in the room, Jane told Leigh that she was scared of the Defendant and that the Defendant had touched her around her breasts and vagina. Jane did not specify or demonstrate where the Defendant had touched her, but she told Leigh that she asked the Defendant to stop and that when the Defendant touched her, it hurt.

Leigh sent Jane downstairs to inform her parents, but when they did not react as she expected, Leigh took Jane, Jane's mother, and Jane's father upstairs into the master bedroom. Leigh told the Defendant to wait downstairs and that it was not a big deal. Leigh then told Jane's parents what Jane had told her. Jane's

mother immediately pulled Jane into the master bathroom and Jane told her that the Defendant had touched her breasts and vagina. Jane also demonstrated how the Defendant touched her but she did not specify that the Defendant touched the inside of her vagina. After they left the bathroom, Jane's father asked Jane where the Defendant had touched her. Jane pointed to her vagina and her chest area. At this time, Jane did not state to either parent that the Defendant touched the inside of her vagina. Jane's father went downstairs to question the Defendant. At this point, the Defendant denied touching Jane. Jane's father did not believe the Defendant and called his squad leader and the military police.

Agents from the United States Criminal Investigation Division ("CID") and the military police responded to the call. Jane told a military police supervisor that the Defendant kissed her shoulder, touched her breasts, and touched her inside her underwear. Again, Jane did not specify that the Defendant touched the inside of her vagina. Both Jane's father and Leigh Koegel gave the military police and CID permission to search the house and seize evidence they uncovered. CID also obtained permission from a military magistrate to search the premises and seize evidence. Leigh informed the CID agents of the Stor Moore storage unit and handed over the keys and paperwork to the unit so that CID could conduct a search. CID obtained warrants from the magistrate to collect and to examine seized hard drives. Through its searches of the W family's townhouse and the Stor Moore storage unit, CID obtained, among other items, three hard drives from the Defendant's desktop computer tower—two Western Di-

gital hard drives manufactured in Thailand and one Hitachi hard drive manufactured in Thailand—and a Seagate external hard drive manufactured in China. A CID digital forensic examiner conducted an examination of the information stored on the three hard drives from the computer tower and the Seagate external hard drive, along with the other drives CID recovered. The examiner was able to identify the Defendant's user profile associated with 100 videos and 33 images of apparent children posed in a lewd or lascivious manner or engaged in sexual acts, 15 videos depicting acts of bestiality, and over 134,000 animated images depicting the sexual assault of children. The examiner also found uTorrent file sharing software that allows the user to download files from other users, CCleaner software that allows the user to delete all records of computer activity as well as internet history, and File Re-namer Basic software that allows the computer user to rename files and folders.

The Defendant was arrested by the military police and taken to a holding area at CID where an agent read him his Miranda rights. CID took the Defendant's DNA and then released him back to his unit. A few days later, on February 16, 2010, a deputy sheriff from the Yorktown–Poquoson Sheriff's Office found the Defendant bleeding from self-inflicted cuts to his arms in a Yorktown apartment. The Defendant had mailed a handwritten suicide letter to his wife,[1] consumed alcohol and pills, and then cut himself in an attempt to commit suicide. On page six (6) of the handwritten suicide letter, the Defendant admits that he groped Jane and "saw her down below," but the Defendant also claims that he "didn't rape her or penetrate her in any way" and that "she's still

---

1. The Defendant addressed the letter to "To whom it may concern," but added language at the end of the letter expressing love to his wife. The Defendant copied the letter, added an additional paragraph again expressing his love for his wife, and mailed the copy to his wife.

intact." The Defendant was taken into custody and sent to Portsmouth Naval Medical Center where he received psychiatric treatment. The Defendant told a doctor and a nurse at the medical center that he had groped a little girl, but he did not specify exactly what he did. He claimed that he was suffering from post-traumatic stress disorder, that he had been viewing several types of pornography, and that touching Jane did not give him any pleasure.

## II. CONCLUSIONS OF LAW

### a. Count 1: Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. § 2241(c) and 7

In order to convict the Defendant for aggravated sexual abuse of a child as charged in the superseding indictment, the Government had to prove at trial beyond a reasonable doubt that (1) the Defendant knowingly engaged in a sexual act with Jane Doe, to wit: penetration of the genital opening of another by hand or finger or by an object, with the intent to abuse, humiliate or harass, degrade or arouse or gratify the sexual desire of any person;[2] (2) Jane Doe had not attained the age of 12 years at the time of the incident; and (3) the incident occurred in the special maritime and territorial jurisdiction of the United States. 18 U.S.C. §§ 2241(c), 2246(2)(C).

If the Government failed to prove every element of the offense set forth in 18 U.S.C. § 2241(c) beyond a reasonable doubt, under the circumstances in this case, the Court as finder of fact could still consider whether the Defendant committed the lesser included offense of abusive sexual contact under 18 U.S.C. § 2244(a)(5). See Fed.R.Crim.P. 31(c) ("A defendant may be found guilty of any of the following: (1) an offense necessarily included in the offense charged."); *United States v. Ashley*, 606 F.3d 135, 142 (4th Cir.2010) ("[A] jury can be instructed on any 'lesser included offense' whose elements were all contained within the grand jury's charge." (citation omitted)). A conviction for abusive sexual contact requires proof of elements (2) and (3) above and "sexual contact" instead of a "sexual act." 18 U.S.C. § 2244(a)(5). "Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Some jurisdictions do not recognize abusive sexual contact as a lesser included offense of aggravated sexual abuse when the defendant is charged with committing a sexual act as defined by 18 U.S.C. § 2246(2)(A) or (B). This is because the definition of sexual contact contains the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person, while the definitions of sexual act under subsections (2)(A) and (2)(B) do not require such specific intent. *See, e.g., United States v. Velarde*, 214 F.3d 1204, 1213 (10th Cir.2000) (" 'Because section 2244 contains a specific intent element that sections 2242 and 2243 do not have, the crime of abusive sexual contact is not a lesser included offense of the crime of sexual abuse.' " (quoting *United States v. Castillo*, 140 F.3d 874, 886 (10th Cir. 1998))); *United States v. Hourihan*, 66 F.3d 458, 465 (2d Cir.1995) ("The words 'intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person' are crucially significant.

---

**2.** While the definition of "sexual act" under 18 U.S.C. § 2246(2) encompasses several different types of conduct, the superseding indictment only charges the Defendant with a "sexual act" as defined by subsection (2)(C).

An attempt to perform a sexual act does not require such an intent. In short, sexual contact requires something that an attempted sexual act does not.").[3]

■ In this case, however, the superseding indictment charged the Defendant with a sexual act as defined by 18 U.S.C. § 2246(2)(C), which requires "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Doc. 15. Because this definition of sexual act includes the specific intent element required for sexual contact, the elements for abusive sexual contact are necessarily included within the charge of aggravated sexual abuse. Therefore, abusive sexual contact is a lesser included offense. Fed.R.Crim.P. 31(c).

Applying the findings of fact to the law in this case, the evidence produced at trial clearly supports the conclusions that Jane Doe was six years old at the time of the incident and that the W family's townhouse was located within Fort Eustis, which is a military post within the exclusive territorial jurisdiction of the United States. Also, the Defendant's suicide letter and the abundance of child pornography found on the Defendant's hard drives prove beyond a reasonable doubt that the Defendant touched Jane with the intent of gratifying his sexual desires.

■ The only remaining issue is whether the Government proved beyond a reasonable doubt that the Defendant penetrated Jane Doe's vagina. At trial, Jane Doe was the only witness that testified that the Defendant touched the inside of her vagina with his hand. The Government's other witnesses testified that Jane Doe said the Defendant touched her vagina and that the Defendant admitted that he groped Jane Doe. However, the Government did not put forth any evidence, aside from the victim's testimony, that the Defendant penetrated Jane Doe as alleged in the superseding indictment. Meanwhile, the Defendant wrote in a suicide letter that he "didn't rape [Jane] or penetrate her in any way" and that "she's still intact." This statement inside the suicide letter coupled with the manner in which it was handled at trial is enough to create a reasonable doubt in the Court's mind as the finder of fact as to whether the Defendant digitally penetrated Jane Doe. Therefore, the Court **FINDS** the Defendant **NOT GUILTY** on Count One as charged.

Although the victim was only six (6) years of age in February 2010 and seven (7) years of age at the time of trial, the Court finds her testimony clear and persuasive. However, the Court finds the Defendant's suicide letter had sufficient indicia of truthfulness to create a reasonable doubt in the mind of the Court. The Defendant apparently wrote the suicide letter while he was overwhelmed with guilt two (2) days after the incident and wished to tell the truth. The Defendant admitted responsibility for groping in the letter but denied penetration. The language which the Defendant used is consistent with his later statements to others that he

---

**3.** The Eighth Circuit has found abusive sexual contact to be a lesser included offense of aggravated sexual abuse even when the definition of sexual act does not contain an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The Eighth Circuit has found "the intent language ... appears in the definitions of both 'sexual act' and 'sexual contact'" based on its reading of the statute. *United States v. Demarrias,* 876 F.2d 674, 676 (8th Cir.1989). The Fourth Circuit has not addressed the issue. *See United States v. Downer,* 143 F.3d 819, 821 (4th Cir.1998) ("While the authorities are not entirely uniform with respect to that proposition, we do not have to decide the question."). In this case, as noted above, the Court need not choose a side because both "sexual contact" and "sexual act" require an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

"groped" a little girl. Furthermore, the Government read excerpts from the same paragraph of the suicide letter which contained the denial during closing argument, but specifically left out the Defendant's express denial of penetration. Accordingly, the Court has a reasonable doubt whether the Defendant penetrated Jane Doe as alleged and cannot find the Defendant guilty of aggravated sexual abuse of a child.

■ The Court, however, **FINDS** the Defendant **GUILTY** of the lesser included offense of abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(5). As noted above, a conviction for abusive sexual contact encompasses all the elements required for a conviction under section 2241(c), except that instead of penetration of the vagina, the Government only had to prove beyond a reasonable doubt that the Defendant touched Jane Doe's vagina or breasts. The Government produced such proof at trial and, therefore, the Court finds the Defendant guilty of the lesser included offense of abusive sexual contact.

 *b. Counts 2–7: Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)*

■ In order to convict the Defendant on Counts Two through Seven for receipt of child pornography, the Government at trial had to prove beyond a reasonable doubt on each count that (1) the Defendant knowingly received a visual depiction containing child pornography; (2) the visual depiction was transported in or affecting interstate or foreign commerce, including by computer, or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce, including by computer; and (3) the Defendant knew of the sexually explicit nature of the material and that the visual depictions were of actual minors en-

gaged in that sexually explicit conduct. 18 U.S.C. § 2252A(a)(2).

For purposes of the statute as applied in this case, "minors" means persons under the age of eighteen years. 18 U.S.C. § 2256(1). "Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8)(A). "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A).

At the conclusion of the presentation of evidence at trial, the Court granted the Government's motion to dismiss Count Six of the superseding indictment and, therefore, only considered whether the Defendant was guilty on Counts Two through Five and Count Seven. Those counts charged the Defendant with the receipt of one video or image containing child pornography. After viewing the video or image associated with the relevant count and hearing the CID digital forensic examiner's testimony, in the mind of the Court as the finder of fact, the Government proved all elements of the offense on the relevant remaining counts beyond a reasonable doubt. Therefore, the Court **FINDS** the Defendant **GUILTY** of receiving child pornography on Counts Two through Five and Count Seven.

The Court finds each visual depiction to be child pornography based on the examin-

er's testimony and the Court's interpretation of the image or video. The Court finds that the Defendant knowingly received these visual depictions based on the receipt date noted in the examiner's report and the user profile associated with each visual depiction, which matched the Defendant's user profile. The Court also finds that the Defendant was aware that the visual depictions were of minors engaged in sexually explicit conduct based on the abundance of child pornography, outside of the indicted counts, the examiner's discovery on the Defendant's hard drives of CCleaner and File Re-namer Basic software that enabled the Defendant to hide the existence of child pornography files, and Leigh Koegel's testimony that the Defendant had used uTorrent to download child pornography in the past. Finally, the Court finds that the Defendant received the visual depictions via interstate commerce based on Leigh's testimony that the Defendant had access to the internet and, again, that the Defendant had uTorrent file sharing software that he had used in the past to download child pornography from users connected to the internet.

The Court rejected the Defendant's argument at trial that the Government failed to prove beyond a reasonable doubt that the Defendant received the images. The Defendant argued that the Government had only presented evidence that the Defendant's user profile was associated with the images and had not proven that the Defendant physically sat at the computer and downloaded the files on the receipt dates. In this case, however, circumstantial evidence is enough to prove receipt beyond a reasonable doubt because the Defendant's user profile was associated with the receipt of each image and no

evidence indicated that another person used the Defendant's computer.

The Court similarly rejected the Defendant's argument at trial that the Government failed to prove beyond a reasonable doubt that the Defendant received the visual depictions through interstate commerce because the Government did not specifically show how the image got onto the Defendant's computer. Again, the Government need not demonstrate exactly how the Defendant put the visual depictions on his computer. The circumstantial evidence that the Government produced at trial—access to the internet, existence of uTorrent file sharing software—and the lack of any contradicting evidence is enough to prove the interstate commerce element beyond a reasonable doubt.

c. *Counts 8–9: Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B)*

In order to convict the Defendant on both Counts Eight and Nine for receipt of child pornography, the Government at trial had to prove beyond a reasonable doubt on each count that (1) the Defendant knowingly possessed a visual depiction containing child pornography; (2) the visual depiction was transported in or affecting interstate or foreign commerce, including by computer, or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce, including by computer; and (3) the Defendant knew of the sexually explicit nature of the material and that the visual depictions were of actual minors engaged in that sexually explicit conduct. 18 U.S.C. § 2252A(a)(5)(B).[4]

---

**4.** "Minors," "child pornography," and "sexually explicit conduct" have the same meaning as they did for receipt of child pornography as set forth in the analysis of Counts Two through Seven. *See* supra Part II.b.

Count Eight of the superseding indictment charged the Defendant with possession of one of the Western Digital hard drives from the desktop computer tower, which contained videos and images of child pornography. Count Nine of the superseding indictment charged the Defendant with possession of the Seagate external drive, which also contained videos and images of child pornography. After viewing some of the visual depictions from each drive and from the Defendant's other drives and hearing the CID digital forensic examiner's testimony, in the Court's mind as the finder of fact, the Government proved all elements of the offense on both counts beyond a reasonable doubt. Therefore, the Court **FINDS** the Defendant **GUILTY** on Counts Eight and Nine for receiving child pornography.

 Similar to the analysis for receipt of child pornography, the Court finds (1) that each drive contained child pornography as defined by the statute; (2) that the Defendant knowingly possessed drives that contained child pornography based on the abundance of child pornography found on all of the Defendant's drives, Leigh Koegel's testimony regarding how the Defendant downloaded child pornography in the past, and the existence of cover-up software; and (3) that the Defendant received the drives and the visual depictions through interstate commerce based on the labels on the drives that stated that they were manufactured in foreign countries and the testimony that the Defendant had access to the internet and used uTorrent file sharing software to download child pornography. The Defendant argued that not all of the visual depictions shown during trial contained minors. Even if that were true, multiple visual depictions on each drive clearly contained minors and that is enough for a conviction on each count.[5]

### d. Count 10: Possession of Obscene Visual Representations of the Sexual Abuse of Children, in violation of 18 U.S.C. § 1466A

In order to convict the Defendant on Count Ten for possession of obscene visual representations of the sexual abuse of children, the Government at trial had to prove beyond a reasonable doubt that (1) the Defendant knowingly possessed a visual depiction of any kind—here, Japanese anime cartoons; (2) the Japanese anime cartoons depict minors engaged in sexually explicit conduct;[6] (3) the Japanese anime cartoons are obscene; (4) the Defendant knew of the sexually explicit and obscene nature of the Japanese anime cartoons; and (5) the visual depiction was shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been shipped or transported in interstate or foreign commerce by any means, including a computer, and that the offense was committed in the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 1466A(b)(1), (d).

 Count Ten of the superseding indictment charged the Defendant with possession of obscene visual depictions of the

---

**5.** The Defendant also made the arguments that he made regarding receipt of child pornography—that the Government did not prove beyond a reasonable doubt that the visual depictions were downloaded from another state or country and that the Government did not prove beyond a reasonable doubt that the Defendant possessed the visual depictions. The Court again rejects these arguments under the reasoning set forth in the section analyzing Counts Two through Seven. *See supra* Part II.b.

**6.** "Minors" and "sexually explicit conduct" have the same meaning as they did for receipt of child pornography and possession of child pornography. 18 U.S.C. § 1466A(f)(2).

sexual abuse of children found on one of the hard drives from the Defendant's desktop computer tower. After viewing a sampling of the Japanese anime cartoons from the hard drive and hearing the CID digital forensic examiner's testimony, in the Court's mind as the finder of fact, the Government proved all elements of the offense beyond a reasonable doubt. Therefore, the Court **FINDS** the Defendant **GUILTY** on Count Ten for possessing obscene visual representations of the sexual abuse of children. Similar to the analysis regarding receipt and possession of child pornography, the Court finds that the Japanese anime cartoons depict minors engaged in sexually explicit conduct; that the Defendant was aware of the nature of the material he possessed based on the abundance of Japanese anime cartoons depicting the sexual abuse of minors found on the Defendant's computer; and that the Japanese anime cartoons were shipped through interstate commerce via the internet based on the testimony that the Defendant had the internet and had uTorrent file sharing software.

█ The only remaining issue is whether the Japanese anime cartoons are obscene. In order for the government to obtain a conviction for an obscene visual depiction, the government must satisfy the standards in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *United States v. Whorley,* 386 F.Supp.2d 693, 697 (E.D.Va.2005), *aff'd United States v. Whorley,* 550 F.3d 326 (4th Cir.2008). Under *Miller,* when considering whether a visual depiction is obscene, "[t]he basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole,

lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24, 93 S.Ct. 2607. Courts in this district have found Japanese anime cartoons to be obscene when the cartoons depict the sexual abuse of children. *See Whorley,* 550 F.3d at 330 (noting that a district court from the Eastern District of Virginia convicted the defendant "of knowingly receiving on a computer 20 obscene Japanese anime cartoons depicting minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 1462; [and] (2) knowingly receiving, as a person previously convicted of receiving depictions of minors engaging in sexually explicit conduct, the same 20 anime cartoons, in violation of 18 U.S.C. § 1466A(a)(1)").

█ Applying the standards set forth in *Miller,* most, if not all, of the Japanese anime cartoons stored on the Defendant's hard drive are obscene. Under community standards, the cartoons appeal to a prurient interest in sex as many of the cartoons depict children in pain from being sexually abused by an adult. The cartoons depict patently offensive sexual conduct as defined under 18 U.S.C. § 2256(2)(A) as many of them show young children engaged in forced sexual intercourse with adults. Finally, the cartoons lack "serious literary, artistic, political, or scientific value" because cartoons depicting rape or forced sexual activity with a minor appeal only to the prurient interest of the person viewing them. It is important to note that the Court does not necessarily find that all of the visual depictions the Government presented to the Court at trial met the *Miller* test. The Court simply finds that most of the cartoons produced at trial were obscene under *Miller.* Therefore, the Defendant was in possession of obscene visual representations of the sexual abuse of children.

### III. CONCLUSION

For the reasons stated above, the Court **FINDS** the Defendant **GUILTY** on Count One for the lesser included offense of abusive sexual contact, in violation of 18 U.S.C. § 2244, but **NOT GUILTY** for aggravated sexual abuse of a child under 18 U.S.C. § 2241(c); **GUILTY** on Counts Two through Five and Count Seven for receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); **GUILTY** on Counts Eight and Nine for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and **GUILTY** on Count Ten for the possession of obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. § 1466A(b)(1). Count Six was dismissed at the end of the presentation of evidence at trial upon a motion by the Government.

The Clerk is REQUESTED to mail a copy of this Order to all counsel of record.

It is so **ORDERED.**