# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 96-2680/3308

_____

James Earl Harris, Husband;       *
Luvenia Harris, Wife,             *
                                  *
    Appellants/Cross-appellees,   *   Appeals from the United States
                                  *   District Court for the
    v.                            *   Eastern District of Arkansas
                                  *
Folk Construction Company,        *
                                  *
    Appellees/Cross-appellants.   *

_____

Submitted:     September 10, 1997

Filed:          March 6, 1998

_____

Before McMILLIAN, ROSS and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

James Earl Harris ("Harris") appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas upon a jury verdict finding in favor of Folk Construction Company ("Folk"). For reversal, Harris argues that the district court erred in holding that (1) the magistrate judge had proper authority to

supervise jury deliberations and to dismiss a juror for cause; (2) the magistrate judge's *ex parte* communications with the juror were proper; and (3) the jury instruction that defined the term "seaman" was a correct statement of law.  Harris also challenges several evidentiary rulings of the district court.

On cross-appeal, Folk contests the district court's denial of its motion for costs, pursuant to Rule 68 of the Federal Rules of Civil Procedure.  In addition, Folk moves this court to amend the record to include the affidavit of the deputy courtroom clerk of the district court, Mary Ann Rawls.

For the reasons discussed below, we reverse the judgment of the district court, remand the case for further proceedings, and dismiss Folk's motion and cross-appeal as moot.

## Jurisdiction

Jurisdiction was proper in the district court based upon 46 U.S.C. § 688 *et seq.*, and 28 U.S.C. § 1332.  Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

## Background

For purposes of this opinion, only a brief outline of the facts supporting the underlying claims is required.  Harris was injured on September 4, 1991, while working on the crew of the dredge ship *Cathy M.* At the time in question, the *Cathy M.* was dredging the St. Francis River and the St. Francis River basin in Arkansas pursuant to a contract between Folk and the United States Corps of Engineers.  Folk ran the dredging operation.  Harris was an employee of Folk.

On December 15, 1993, Harris filed a claim to recover for the injuries that he sustained in the accident.[1]  Harris's causes of action were based on the Jones Act, 46 U.S.C. § 688 *et seq.*, and the general maritime doctrine of unseaworthiness.  Each claim required Harris to prove that he was a "seaman" at the time of the accident.  A jury was charged with determining this discrete issue.

The trial commenced on May 6, 1996, in Pine Bluff, Arkansas, with a district judge presiding.  The jury began deliberations on Friday, May 10, 1996.  Having not reached a verdict by the close of court, the jury was instructed to return on Monday, May 13, 1996, to continue deliberations.  However, in reliance on the parties' estimations that the case would conclude on May 9, 1996, the district judge had previously scheduled a trial to begin in Little Rock, Arkansas, on May 13, 1996.  In light of this conflict, the deputy courtroom clerk, Mary Ann Rawls, advised counsel for the parties that a magistrate judge would preside over jury deliberations.  Neither party objected to this arrangement.  However, a formal consent form was not signed by either party [2] nor did either party give another form of express consent.

---

[1]The suit was originally filed by Harris and his wife, Luvenia Harris, who asserted a claim against Folk for loss of society and consortium.  The district court dismissed her claim by order dated August 15, 1995.  In addition, the district court dismissed (James Earl) Harris's claim for punitive damages by order of February 1, 1996, and reaffirmed the dismissal by order of May 3, 1996.  Harris asserts that his failure to challenge these rulings in his briefs on appeal "should not be deemed an acceptance of the Court's rulings on these issues." Appellant's Brief at 5.  Harris acknowledges that these issues would be rendered moot if this court affirms the judgment of the district court. Id.  However, by failing to assert grounds for reversal of these orders in his briefs, Harris is deemed to have waived these issues on appeal. See Fed. R. Civ. P. 28(a)(3),(6); see also Rogers v. Carter, No. 96-1916, 1998 WL 15220 at *6 n.1 (8th Cir. Jan. 20, 1998).

[2]Federal Rules of Civil Procedure Form 34A effects referral to a United States Magistrate Judge any proceedings, including trial and entry of judgment, in designated civil matters in accordance with 28 U.S.C. § 636(c) and upon the consent of the parties. See Fed. R. Civ. P. Form 34A.

On Monday, May 13, 1996, eight of the nine jurors reported to the jury room. Juror Loraine Waschalk ("Waschalk") refused. Instead, she went to Deputy United States Marshal Max Bellew ("Bellew") and told him that she "was scared of the other jurors" and that "she was unsure of her safety within the jury room." Order at 2 (July 31, 1996). Waschalk also gave Bellew a note to deliver to the magistrate judge which stated, among other things, that Harris would not get a fair trial with the empaneled jury.[3] The note also mentioned Waschalk's intent to request a mistrial.[4]

---

[3]Waschalk asked Bellew to read the note. Bellew refused to do so and told her that he would give it to the judge.

[4]The note states in full:

Your Honeur,

Mr. Harris will not get a fair trial with this jury. Friday as we went into the jury room to deliberate, one juror said "Let's pull an O.J. and get in and out of here.

Another juror threw down her notes and said "My mind is made up! She put her hand on another jurors back and said "And your mind is the same as my mind"!

When I asked the foreman to have something read back to me, she said that I did <u>not</u> need to know. I asked for a ruling, she would not send out for one. Another juror said she could tell me what I wanted to know. I said that I was not supposed to ask another juror. After Jim said that he would vote with the crowd he said "But I still believe that Harris is a seaman."

The foreman said to me "Convince us that Harris is a seaman"! I said "O.K. Let me think." this juror said "She will not convince me. My mind is made up and I will not change it. I said "I will ask the judge for a mistrial". One juror said "You will never get a mistrial. You will be sent back in and to stay until we all agree. The rest of the time with going over Harris tax return & making fun of him.

/s/ Loraine Waschalk
Juror #1

-4-

Deputy Bellew was put under oath and his statements regarding these events are part of the record. See Joint Appendix, Vol. III at 702-03 (Transcript of Verdict of the Jury, May 13, 1996, at 3-4). Bellew noted that Waschalk looked scared and upset. He stated that he "tried to console her, but she had the idea [he] was trying to lock her up, [and] . . . began talking loud and advising [him] she wanted a lawyer." Order at 2 (July 31, 1996). Bellew then took Waschalk to the clerk's office where she eventually calmed down some and told Bellew that she had gotten very little sleep over the weekend, was very worried for her safety, and did not want to be with the jury any longer. Id.

After speaking to a member of the district court's staff, Bellew faxed Waschalk's note to the district judge. The district judge reviewed the note, obtained Bellew's oral statement, and then instructed the magistrate judge to bring Waschalk into chambers and discuss the matter with Waschalk. The district judge further instructed the magistrate judge "not only to listen to Ms. Waschalk's concerns and feelings about the situation and to determine her willingness to continue on the jury, but also to gauge her state of mind and emotional well-being." Id. at 2-3. The district judge authorized the magistrate judge to dismiss Waschalk from the jury if the magistrate judge determined that she was unwilling to continue her service and too emotionally unstable to serve competently. Id.

The magistrate judge met with Waschalk in chambers without the knowledge of either party's counsel. This conversation was not recorded as part of the record nor were there any reported witnesses. Based on this conversation and Waschalk's note, the magistrate judge determined that Waschalk was "unreasonably upset" and "very

---

Joint Appendix, Vol. III, at 613 (emphasis in original).

emotionally unstable." Order at 3 (July 31, 1996). The magistrate judge then dismissed Waschalk for cause pursuant to Rule 47(c) of the Federal Rules of Civil Procedure.[5]

The magistrate judge then convened the parties and informed them of what had transpired. Harris objected to Waschalk's dismissal and moved for a mistrial. This motion was denied by the magistrate judge. The eight remaining jurors were called back into the courtroom and advised that Waschalk had been excused from further participation in the deliberations and that "the reason behind [Waschalk's dismissal] is not anything that [they] need[ed] to concern [themselves] with." Joint Appendix, Vol. III at 708 (Transcript of Verdict of the Jury, May 13, 1996, at 9). The magistrate judge then directed the jury to return to the jury room and resume deliberating in a manner consistent with the district judge's earlier instructions.

After only seven minutes of deliberation, the jury reached a unanimous verdict in favor of Folk. Harris renewed his motion for a mistrial, which the magistrate judge again denied. The district judge later entered a judgment consistent with the jury verdict. Harris in turn moved the district court for a new trial, for relief from judgment or order, for a post-trial evidentiary hearing, and to complete the record. Folk filed a motion for costs pursuant to Rule 58 of the Federal Rules of Civil Procedure.[6] By order dated July 31, 1996, the district judge denied each of these motions. Both parties appeal.

## Discussion

Harris argues that the district court erred in authorizing a magistrate judge to supervise the jury deliberations and, more important, to dismiss a juror because the

---

[5]Fed. R. Civ. P. 47(c).

[6]Fed. R. Civ. P. 58.

magistrate judge did not have authority to perform these duties under the Federal Magistrate Judges Act (the "Act"), 28 U.S.C. § 631 *et seq*. Harris emphasizes that he did not consent to the magistrate judge's authority as required by 28 U.S.C. § 636(c), and that such authority was not properly delegated to the magistrate judge by the district judge.

The Act provides that a magistrate judge has the authority to preside over various aspects of civil litigation in two situations. First, the parties to a civil matter may consent to the magistrate judge performing any and all proceedings, including those adjudicatory duties traditionally reserved for Article III judges.[7] See id.; Fed. R. Civ. P. Form 34A; see also Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil & Ref. Corp., 739 F.2d 1313, 1315 (8th Cir. 1984) (en banc) (upholding the constitutionality of 28 U.S.C. § 636(c) and further holding that, "insofar as Article III protects individual litigants, those protections can be waived"), cert. denied, 469 U.S. 1158 (1985). The Act also has a catchall provision which allows a judge to delegate to a magistrate judge "additional duties" that are not inconsistent with the Constitution and laws of the United States. 28 U.S.C. § 636(b)(3). The facts of the instant case implicate both of these provisions.

Folk argues that Harris consented to the magistrate judge's supervising the jury deliberations, including the magistrate judge's authority to dismiss a juror pursuant to Rule 47(c) of the Federal Rules of Civil Procedure, by failing to object to the magistrate

---

[7]28 U.S.C. § 636(c)(1), provides in part that:

Upon the consent of the parties, a full-time magistrate judge . . . may conduct any or all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts [she or] he serves.

Id.

judge's authority at any stage of the trial. In short, Folk maintains that Harris waived the consent requirement in § 636(c). In addition, Folk contends that the district judge properly delegated authority to the magistrate judge as an additional duty, pursuant to § 636(b)(3). To resolve these issues, this court must determine whether the requirements of § 636(c), which expressly authorize the magistrate judge's authority in question, were met, and, if not, whether the functions performed by the magistrate judge in this case qualify as "additional duties" that are delegable pursuant to § 636(b)(3).

We turn first to Folk's waiver argument which caselaw in this circuit makes clear is without merit. Indeed, we have consistently held that "'[s]ection 636(c) requires a clear and unambiguous statement in the record of the affected parties' consent to the magistrate judge's jurisdiction.'" See Reiter v. Honeywell, 104 F.3d 1071, 1073 (8th Cir. 1997) (Reiter) (quoting J.C. Henry v. Tri-Services, Inc., 33 F.3d 931, 933 (8th Cir. 1994) (J.C. Henry) (rejecting waiver argument and remanding for new trial where parties neither objected nor expressly consented to magistrate judge's authority in conducting jury trial)); see also Gleason v. Secretary of Health and Human Servs., 777 F.2d 1324, 1324-25 (8th Cir. 1985) (dismissing appeal from magistrate judge 's ruling on motion for attorneys' fees for lack of final judgment where there was no "clear and unambiguous statement in the record of the affected parties' consent to the magistrate judge judge's jurisdiction")). This consent requirement is the basis of § 636(c)'s constitutionality. See, e.g., Adams v. Heckler, 794 F.2d 303, 307 (7th Cir. 1986) ("[V]alid consent is the linchpin of the constitutionality of 28 U.S.C. § 636(c)."). Without clear and unambiguous consent, litigants cannot be deemed to have forfeited their right to proceed in front of an Article III judge. See J.C. Henry, 33 F.3d at 933 (holding that magistrate judge lacked authority to enter final judgment where record contained no clear statement of consent by party which had not yet entered appearance in action). Moreover, in Reiter, this court cautioned that "[w]e will not lightly find a waiver of that consent." 104 F.3d at 1074 (adopting Eleventh Circuit's rationale in

<u>Hall v. Sharpe</u>, 812 F.2d 644, 649 (11th Cir. 1987), that waiver approach "does violence" to Congress's consent requirement in section 636(c)).

Folk relies, among other cases, on <u>Peretz v. United States</u>, 501 U.S. 923, 932 (1991), in which the Supreme Court held that "[t]here is no Article III problem when a district court judge permits a magistrate judge to conduct voir dire in accordance with the defendant's consent." <u>Id.</u> We find that <u>Peretz</u> is the most persuasive case in favor of Folk's waiver argument. However, this court has distinguished <u>Peretz</u> from cases like the instant one where there was no discernible statement of consent by the litigants. See <u>Reiter</u>, 104 F.3d at 1073 (noting that in <u>Peretz</u> "the parties expressly consented to the magistrate judge's conducting of the voir dire, the action about which they later complained" on appeal). Indeed, in <u>Peretz</u> the Court emphasized the significance of the parties' express consent, stating, "[P]etitioner's counsel, rather than objecting to the magistrate judge's role *affirmatively welcomed* it." <u>Peretz</u>, 501 U.S. at 932 (emphasis added). Thus, there is little support for Folk's position in the cases on which it relies.

The record in the instant case reveals and indeed, Folk concedes, that neither party gave express consent to the magistrate judge to supervise the jury, evaluate a juror's competency or, more important, to dismiss a juror. Instead, the parties merely failed to object to the magistrate judge's authority after being informed that a magistrate judge would oversee jury deliberations. Thus, Harris's silence, if deemed consent, is neither a clear nor unambiguous statement of consent. We therefore conclude that there was no valid consent under § 636(c). Moreover, while parties are encouraged to challenge as early as possible the delegation of authority to a magistrate judge, failure to do so immediately does not constitute waiver of the right to appeal. See <u>Fowler v. Jones</u>, 899 F.2d 1088, 1092-93 (11th Cir. 1990) (rejecting waiver argument and reversing and remanding for new trial where parties failed to contest magistrate judge's authority until after trial). Accordingly, we hold that Harris did not

consent to the magistrate judge's jurisdiction nor did Harris waive his right to challenge that authority on appeal.

Where no consent is given under § 636(c), a magistrate judge is confined to his or her limited authority under the remaining provisions of the Act.  Folk argues that the magistrate judge's authority to supervise the jury deliberations, including the dismissal of a juror, was properly delegated as an additional duty pursuant to § 636(b)(3).  To be sure, "[a] purported section 636(b) referral may not act as a section 636(c) referral and bypass the consent requirement of that section."  Reiter, 104 F.3d at 1073-74 (citing In re Wickline, 796 F.2d 1055, 1058 (8th Cir. 1986)).  Therefore, the authority conferred upon the magistrate judge in the instant case must be independently delegable to facilitate the performance of "additional duties."  See 28 U.S.C. § 636(b)(3).

Harris maintains that § 636(b)(3) cannot be the proper basis for the magistrate judge's exercise of authority.  Harris urges that, "[i]f a magistrate [judge] is prohibited from selecting a jury at the onset of the proceedings because of the nature of the function, it follows, *a fortiori*, that he is also prohibited from communicating with a juror regarding her competency to proceed with deliberations." Appellant's Brief at 11 (citing Gomez v. United States, 490 U.S. 858, 875-76 (1989) (Gomez)).  We agree.

The ministerial tasks of supervising a jury and receiving its verdict on behalf of an Article III judge are among those additional duties delegable under § 636(b)(3).  See United States v. Johnson, 962 F.2d 1308, 1312 (8th Cir.) (citing United States v. Demarrias, 876 F.2d 674, 677 (8th Cir. 1989) (Demarrias)), cert. denied, 506 U.S. 928 (1992); see also United States v. Foster, 57 F.3d 727, 732 (9th Cir. 1995) (agreeing with this court's holding in Demarrias and noting that the magistrate judge judge "did nothing more than accept and file the verdict").  By contrast, in Gomez, the Supreme Court excluded from this category of judicial functions acts such as voir dire because it involves making judicial determinations.  490 U.S. at 874-75.  Specifically, the Court held that jury selection is not an additional duty, and further noted that, in performing

such functions, "the court must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality."[8]  Id. at 875; see also Peretz, 501 U.S. at 933 (holding that voir dire is not an "additional duty" under § 636(b)(3), although a district court may permit a magistrate judge  to conduct voir dire in a criminal trial in accordance with the defendant's consent).

Similarly, in Demarrias, this court held that a district court judge may allow a magistrate judge to supervise a deliberating jury and to accept its verdict without depriving a defendant of due process or violating Article III of the Constitution of the United States.  876 F.2d at 677. This court observed that, although the magistrate judge communicated with the jury, the district judge was in constant contact with the magistrate judge.  Id.  The district judge gave the magistrate judge instructions to telephone if the jury had any questions so that the district judge could dictate the magistrate judge's response.  Id.  When the jury asked a question during deliberations, the district judge was called and dictated a response which the magistrate judge signed.  Id.  This court upheld the magistrate judge's and district judge's actions, noting that the district judge "maintained full control of the proceedings by telephone."  Id.  We further stated that, insofar as the magistrate judge communicated with the jury, it did so "simply as an intermediary."  Id.

---

[8]The Court further held that, in a felony case, a defendant's consent to having a magistrate judge preside over jury selection may be effected by his or her failure to object to the magistrate judge's role.  Gomez v. United States, 490 U.S. 850, 875 (1989); see also United States v. Foster, 57 F.3d 727 (9th Cir. 1995); United States v. Johnson, 962 F.2d 1308 (8th Cir. 1992) (holding that a magistrate judge has the authority to accept a jury verdict, even in a felony case where the parties have not consented to such authority).  Moreover, although the Court later interpreted the holding in Gomez as "narrow," Peretz v. United States, 501 U.S. 923, 927 (1991), the facts of the instant case clearly fall within its purview because there was never an expression of consent other than silence.

From these decisions we conclude that, absent clear and unambiguous consent of the affected parties, a district judge may not delegate, pursuant to § 636(b)(3), duties that require a final and independent determination of fact or law by the magistrate judge. Those duties include such adjudicatory functions as evaluating a juror for purposes of Rule 47(c) dismissal. Indeed, just like voir dire, the dismissal of a juror pursuant to Rule 47(c) calls for scrutiny of "not only spoken words but also gestures and attitudes . . . to ensure the jury's impartiality" and competence. Gomez, 490 U.S. at 875. However, where a magistrate judge serves as a mere intermediary in the performance of adjudicatory functions and is under constant and direct supervision of an Article III judge, such functions are freely assignable as "additional duties." See id. Thus, we hold that the evaluation and subsequent dismissal of a juror are not ministerial or "additional duties"; rather, those are traditional adjudicatory functions that may only be performed by or under the constant and direct supervision of an Article III judge, absent clear and unambiguous consent to delegation.

In the instant case, the district judge instructed the magistrate judge "not only to listen to Ms. Waschalk's concerns and feelings about this situation and to determine her willingness to continue on the jury, but also to gauge her state of mind and emotional well-being." Order at 3 (July 31, 1996). In following these instructions, the magistrate judge necessarily did much more than act as a mere intermediary. The district judge never spoke to the juror or dictated a response to her inquiry. The magistrate judge even instructed the jury as to what effect, if any, to give Waschalk's dismissal without any additional guidance from the district court noted in the record. In light of the foregoing, we hold that the magistrate judge lacked the requisite authority to evaluate and then dismiss Waschalk.

In addition, we hold that the manner in which Waschalk was dismissed was reversible error. Despite Folk's arguments to the contrary, Waschalk's note strongly suggests that she was the lone hold-out in favor of Harris. The district court's order indicates that the magistrate judge dismissed Waschalk was not because of her vote,

but rather because she was unable to serve competently as a juror due to her emotional instability. Order at 3, 5, 7-8 (July 31, 1996). This determination of her competency was derived not only from Waschalk's note but also from the magistrate judge's *ex parte* discussions with Waschalk. Id. at 3. However, even assuming that the magistrate judge was acting as a mere intermediary under the constant and direct supervision of the district judge, because the magistrate judge failed to make a record of the *ex parte* proceedings, we are unable to determine the propriety of the decision to dismiss Waschalk.

Rule 47(c) of the Federal Rules of Civil Procedure permits a court to excuse for good cause a juror from service during trial or deliberation. The Supreme Court has held that, in investigating allegations of jury misconduct, trial courts "should not decide and take final action *ex parte* on information . . . , but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, *in a hearing with all interested parties permitted to participate*." Remmer v. United States, 347 U.S. 227 (1954) (emphasis added). In Remmer, the Court vacated a judgment of conviction against the defendant where the district judge conducted an *ex parte* investigation of a juror regarding allegations of jury tampering.[9] Id. (citing the absence of the *ex parte* proceeding). The Court stated: "We do not know from this record, nor does the petitioner know what actually transpired, or whether the incidents that may have occurred were harmful or harmless." Id. at 229.

Relying in part on Remmer, this court held that, "[w]hile the trial judge generally should not conduct any part of the hearing *ex parte*, *ex parte* communications have been upheld where the circumstances warrant and fundamental fairness is not

---

[9]After receiving notice from a juror that such juror had been communicated with by an unknown person about the trial, the district judge ordered the Federal Bureau of Investigation to investigate and make a report on the incident. Remmer v. United States, 347 U.S. 227, 288 (1954).

sacrificed." United States v. Behler, 14 F. 3d 1264, 1268 (8th Cir.), cert. denied, 513 U.S. 960 (1994). This court held that it was not plain error to conduct a hearing outside of the parties' presence for purposes of investigating allegations of jury tampering where both sides knew about the hearing in advance, declined to participate, and raised no objection. Id. Moreover, the conversation with the parties was reported by the court reporter. Id. at 1267. We held that, under these circumstances, the district judge had "substantially complied with the Remmer requirements." Id. at 1268.

In the instant case, neither the district judge nor the magistrate judge attempted to follow the Remmer requirements. The district judge concluded that "no useful purpose would be served by a hearing on the question of Ms. Waschalk's dismissal" and that any interrogation would have upset her fragile emotional state. Order at 7-8; see also Joint Appendix at 706 (Transcript of Verdict of the Jury at 7 ("I want to explain so the record is clear the reason that she wasn't placed under oath and brought into court [is] because she was so emotionally fragile and upset there would have been no point in doing that.")). We do not dispute the latter finding; we merely hold that, absent exigent circumstances, such proceedings must be conducted in the presence of the parties and a record of the proceedings must be made for the benefit of the parties and the reviewing court. Waschalk was interrogated at an *ex parte* hearing in chambers of which neither party had notice until after it occurred. The hearing was not conducted on the record nor were there any witnesses present. In addition, Waschalk was never placed under oath to verify her note to the court.[10]

Although the lack of consent and the failure to follow Remmer warrant reversal without a showing of prejudice to Harris, we also note that the existing record does not support Waschalk's dismissal. The note suggests that Waschalk was the lone hold-out in favor of Harris. A complete record of an *ex parte* juror communication is especially

---

[10]Bellew was put under oath to verify the note and its contents. Joint Appendix, Vol. III, at 702-03 (Transcript of Verdict of the Jury at 3-4).

important where it concerns the potentially prejudicial effects of dismissing a lone hold-out juror. Moreover, we can have no way of knowing what effect, if any, Waschalk's dismissal might have had on the deliberations of the remaining jurors because the remaining jurors were not questioned regarding the dismissal. However, the rapidity with which the jury returned its verdict following Waschalk's dismissal tends to support Harris's theory that either Waschalk was the lone hold-out or her dismissal sufficiently discouraged other jurors from not joining in the verdict. <u>See</u> Fed. R. Civ. P. 47(c), advisory committee note (1991 amendment) ("It is not grounds for the dismissal of a juror that the juror refuses to join with fellow jurors in reaching a unanimous verdict."); <u>see also</u> <u>United States v. Hernandez</u>, 862 F.2d 17 (2d Cir. 1988) ("That a juror may not be removed because he or she disagrees with the other jurors as to the merits of a case requires no citation."), <u>cert. denied</u>, 489 U.S. 1032 (1989).

Harris raises several other grounds for reversal which we have examined closely and found are without merit. As to Harris's challenge to the district court's exclusion of certain evidence, we have carefully considered the record and the parties' arguments and find that there was not an abuse of discretion. Harris's right to challenge on appeal the district court's instruction regarding the definition of seaman, on the other hand, is waived for failure to object. <u>See</u> Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection*.") (emphasis added); <u>see also</u> <u>Dupre v. Fru-Con Eng'g, Inc.</u>, 112 F.3d 329, 334 (8th Cir. 1997) (holding that indefinite objections to a jury instruction without stating on the record the specific grounds therefor does not preserve issue for appeal).

Folk's cross-appeal for reversal of the district court's denial of its motion for costs and Folk's motion to amend the record to include the Affidavit of Mary Ann Rawls are dismissed as moot.

Accordingly, the judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.