[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12936

_____

PB LEGACY, INC,
a Texas corporation,

          Plaintiff,

TB FOOD USA, LLC,

          Plaintiff-Appellee
          Cross Appellant,

*versus*

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC.,
a Florida corporation,
ROBIN PEARL,

2                    Opinion of the Court                    22-12936

Defendants-Appellants
Cross Appellees,

ADVANCED HATCHERY TECHNOLOGY, INC., et al.,

Defendants.

———————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:17-cv-00009-JES-NPM

———————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal and cross-appeal raise several issues concerning a civil jury trial about trade secrets, but the threshold issue—whether the magistrate judge had authority to conduct the last three days of proceedings—is dispositive. After counsel rested but before the jury returned its verdict, the district judge had to leave. Before his departure, the district judge proposed that a magistrate judge receive the verdict, and the parties agreed to that proposal. The magistrate judge not only received the verdict but responded to several jury questions and rejected a request for clarification

about the verdict. Because the parties did not consent to have a magistrate judge perform non-ministerial duties, the magistrate judge improperly exercised Article III authority. We vacate the judgment, remand for a new trial, and dismiss the cross-appeal as moot.

## I. BACKGROUND

About 15 years ago, cousins Ken and Neil Gervais founded Primo Broodstock, a shrimp breeding company based in Texas. Through phenotypic monitoring, the cousins developed a unique line of disease-resistant shrimp. Primo achieved success and sold shrimp all over the world. As the company grew, it needed more space to breed shrimp.

Primo executed a contract with American Mariculture, Inc., a Florida-based company that operated a grow-out facility for shrimp breeding. But Primo failed to perform many of its contractual obligations to Mariculture. Among other breaches, Primo failed to remove its shrimp from Mariculture's facility on time.

When Mariculture notified Primo that it intended to harvest the abandoned shrimp, Primo sued Mariculture in state court. Robin Pearl, the founder and chief executive officer of Mariculture, later met with Ken Gervais and another Primo employee to try to resolve the suit. The parties agreed to give Primo about three months to remove its shrimp from Mariculture's facility. If the shrimp remained after that deadline, Mariculture was expected to kill them. But Primo never removed its shrimp, and Mariculture never killed them. Instead, after the deadline passed, Mariculture

used the shrimp to launch a competing company, American Penaeid, Inc.

Primo sued Mariculture, Penaeid, and Pearl in federal court. The complaint alleges claims of conversion, defamation, trade secret misappropriation, breach of contract, unfair competition, and unjust enrichment. And Mariculture filed counterclaims against Primo and some of its employees. Before trial, TB Food, USA, LLC acquired Primo and its rights in this action, and Primo changed its name to PB Legacy. TB Food is the only plaintiff involved in this appeal.

Most of the claims and counterclaims survived summary judgment, and the case proceeded to a jury trial. During trial, the district judge told the parties that the trial needed to end by a certain date because he had to catch a flight. The district judge threatened a mistrial if the parties failed to finish by his deadline. He said, "In terms of running out the clock, y'all know what the clock is. . . . And, if you run out, I'll see you next year. We'll do [the whole trial] again."

Counsel rested before the district judge's deadline. But the jury was still deliberating when the district judge needed to leave. The day before his departure, the district judge told counsel that he would soon leave, that another district judge could preside the next day, but that any remaining period was uncertain:

> MR. GARGANO [Plaintiff's Counsel]: [L]et's say we do go tomorrow. I assume there will be someone covering. And then, obviously, there might be some

22-12936                Opinion of the Court                5

action taken by either side, you know, to preserve things or—should we do that with that judge or should we, like, [p]reserve everything now. How does the Court want to handle that?

THE COURT: I don't exactly know what you mean by [p]reserving everything now, but I had mentioned before you got here that, right now, I've got a 12 o'clock flight. I'm trying to . . . see if there's a later flight I can take. . . . I've got another District Judge lined up to cover for the rest of tomorrow. Thursday is a different situation. She's not available. Of course, I won't be here so I don't know what happens on Thursday.

The next day, with the jury still deliberating, the district judge met with counsel and proposed without objection that a magistrate judge preside in his absence because he saw no alternative:

THE COURT: Counsel, I've not heard anything from the jury. I wanted to gather because, as you know, although I moved back my flight, apparently, not far enough. I need to be out of here at 3:30. My proposal is that we have the Magistrate Judge who has been assigned to the case take my place in terms of receiving the verdict from the jury. Judge Mizell is available and, of course, can do that. What are your thoughts?

MR. BRINSON [Defendants' Counsel]: We actually informally discussed that, Judge, and we're—I think we're fine with that.

MS. THOMPSON [Plaintiff's Counsel]: That is correct, Your Honor. On behalf of PB Legacy, we would have no objection to that. I know that Magistrate Mizell is familiar with the case.

MR. GARGANO: No objection, no.

THE COURT: Okay. I didn't know of any other way, frankly.

MS. THOMPSON: Right.

THE COURT: So, come 3:30, I'll be gone. And if anything happens from that point on, Judge Mizell will be here.

The magistrate judge began presiding that afternoon, and over the next three days, the magistrate judge responded to six notes or questions from the jury. One question concerned how to calculate damages. The magistrate judge resolved that request by instructing the jury to "refer to the evidence of record and the instructions supplied to you by the Court."

The magistrate judge also read the verdict and asked the clerk to poll the jury. The jury awarded $4.95 million in damages to TB Food and PB Legacy on each of their federal and state trade secret claims. Before dismissing the jury, the magistrate judge asked counsel if there were any issues to address. Defense counsel

asked the magistrate judge to ask the jury to clarify whether it intended to award a total of $4.95 million in damages across both the federal and state trade secret claims or a total of $9.9 million divided equally between each claim. The magistrate judge declined to do so and dismissed the jury.

The parties filed post-trial motions. Penaeid and Pearl moved for judgment as a matter of law on the trade secret claims and raised an issue about damages. TB Food challenged a ruling on an affirmative defense and moved for permanent injunctive relief. The district court denied those motions. No party objected to the magistrate judge presiding over the last three days of trial.

## II. STANDARD OF REVIEW

We review *de novo* whether a magistrate judge had authority to conduct proceedings at a civil jury trial, even when a party fails to object in the district court. *See Fowler v. Jones*, 899 F.2d 1088, 1092–93 (11th Cir. 1990).

## III. DISCUSSION

Mariculture, Penaeid, and Pearl argue that the magistrate judge lacked authority to preside over the last three days of trial because the parties did not consent to the magistrate judge's exercise of Article III authority. TB Food responds that we should not consider the issue because it was not raised in the district court and that, in any event, consent can be inferred from the parties' conduct. We conclude that because the district judge did not receive the parties' consent to have a magistrate judge perform non-

ministerial functions, the magistrate judge improperly exercised Article III authority.

The Federal Magistrates Act provides that "[u]pon the consent of the parties," a magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Consent is a "critical limitation on this expanded jurisdiction." *Gomez v. United States*, 490 U.S. 858, 870 (1989). Indeed, section 636(c) is constitutional in part *because* it requires that the parties and the district court "consent to the transfer of the case to a magistrate [judge]." *Day v. Persels & Assocs.*, 729 F.3d 1309, 1323 (11th Cir. 2013) (citation and internal quotation marks omitted). Without consent, delegation to a magistrate judge "would violate the constitutional requirement that the judicial power of the United States must be vested in Article III courts." *Fowler*, 899 F.2d at 1093.

Ordinarily, consent to a magistrate judge's exercise of Article III authority must be expressed in writing and sought outside the presence of both the district judge and the magistrate judge. "When a magistrate judge has been designated to conduct civil actions or proceedings, the clerk must give the parties written notice of their opportunity to consent under 28 U.S.C. § 636(c)." FED. R. CIV. P. 73(b)(1). "To signify their consent, the parties *must* jointly or separately file a statement consenting to the referral." *Id.* (emphasis added). The "district judge or magistrate judge may be informed of a party's response to the clerk's notice *only if* all parties

have consented to the referral." *Id.* (emphasis added). These procedures "envision[] advance, written consent communicated to the clerk." *Roell v. Withrow*, 538 U.S. 580, 586 (2003). And these procedures are designed to "preserve the confidentiality of a party's choice" and "protect[] an objecting party against any possible prejudice at the magistrate judge's hands later on." *Id.*

In limited circumstances, consent may be implied from the parties' conduct. The Supreme Court has found implied consent when the parties were informed in advance about the scope of a magistrate judge's authority, were "made aware of the need for consent and the right to refuse it," and "still voluntarily appeared to try the case before the Magistrate Judge." *Id.* at 586, 590. The doctrine of implied consent—where consent is signaled "through actions rather than words"—is an exception to the ordinary rule that consent to a magistrate judge's exercise of Article III authority must be expressed in writing. *See id.* at 589; FED. R. CIV. P. 73(b)(1).

Although consent is required before a magistrate judge may exercise Article III authority, *see* 28 U.S.C. § 636(c), a district judge may assign "ministerial tasks" to a magistrate judge without consent from the parties, *see United States v. Desir*, 257 F.3d 1233, 1238 (11th Cir. 2001); 28 U.S.C. § 636(b)(3). The "mere acceptance of a jury verdict and the polling of a jury constitute no more than ministerial tasks that a magistrate judge may properly perform" without the parties' consent. *Desir*, 257 F.3d at 1238. But consent is required when a magistrate judge conducts a "critical stage" of a trial.

*Id.* Instructing the jury and responding to jury questions are critical stages of a trial. *See id.*

TB Food argues that we should not review the magistrate judge's authority because the issue was raised for the first time on appeal. But we have reviewed the merits of a challenge to a magistrate judge's authority to conduct matters at trial, even when a party failed to object in the district court. *See Fowler*, 899 F.2d at 1092 (rejecting argument that "plaintiff's failure to object to the magistrate's actions at any time during the trial amounted to a waiver and that plaintiff is therefore precluded from raising this argument on appeal"). "[W]hen the statute claimed to restrict authority is not merely technical but embodies a strong policy concerning the proper administration of judicial business," the Supreme Court has "treated the alleged defect as 'jurisdictional' and agreed to consider it on direct review even though not raised at the earliest practicable opportunity." *Glidden Co. v. Zdanok*, 370 U.S. 530, 535–36 (1962). The Federal Magistrates Act, which permits delegations of Article III authority, "embodies a strong policy concerning the proper administration of judicial business." *See id.* at 536. So we will consider whether the magistrate judge lacked the authority to preside at trial.

The district judge sought the parties' consent to have the magistrate judge receive the verdict. Before his departure the district judge said, "My proposal is that we have the Magistrate Judge who has been assigned to the case take my place in terms of receiving the verdict from the jury." The parties verbally agreed to that

proposal. But receiving a verdict is a ministerial task that a magistrate judge may perform *without consent*. *See Desir*, 257 F.3d at 1238 ("[M]ere acceptance of a jury verdict and the polling of a jury constitute no more than ministerial tasks that a magistrate judge may properly perform."); *see also Harris v. Folk Constr. Co.*, 138 F.3d 365, 370 (8th Cir. 1998) ("The ministerial tasks of supervising a jury and receiving its verdict on behalf of an Article III judge are among those additional duties delegable under § 636(b)(3).").

The district court did not seek, and the parties did not express, any agreement to have the magistrate judge perform the Article III functions of responding to jury questions or ruling on a request to have the jury clarify the verdict. In *Desir*, we explained that although the magistrate judge could receive a jury verdict without consent, the magistrate judge improperly exercised Article III authority when he instructed the jurors by answering their questions during deliberations. *Desir*, 257 F.3d at 1238; *see also Harris*, 138 F.3d at 370, 373 (no consent needed for magistrate judge to receive verdict, but judgment reversed because magistrate judge dismissed a juror); *United States v. Gomez-Lepe*, 207 F.3d 623, 630, 632 (9th Cir. 2000) (judgment reversed because magistrate judge decided how to address one juror's equivocal answer). Here, without consent from the parties, the magistrate judge exercised Article III authority when he responded to jury questions and rejected a request for clarification about the verdict.

TB Food insists that consent to the magistrate judge's exercise of Article III authority can be implied from the parties'

conduct. But the Supreme Court has found implied consent only when the parties were informed about the scope of the magistrate judge's authority before they expressed consent. *See Roell*, 538 U.S. at 586. In *Roell*, the parties were told—*before* they "signaled consent to the magistrate judge's authority through [their] actions"—that the magistrate judge "intended to exercise case-dispositive authority." *Id.* at 586, 589. Here, by contrast, the parties were told only that the magistrate judge would perform the ministerial task of "receiving the verdict." The magistrate judge exercised authority well beyond the district judge's proposal and performed the Article III functions of instructing the jury on the law and rejecting a request to clarify the verdict. *See Desir*, 257 F.3d at 1238. Consent to a magistrate judge's performance of a ministerial task—when consent to that proposal is not required in any event—does not imply consent to a magistrate judge's performance of Article III functions.

That the parties failed to object when the magistrate judge assumed an Article III role is insufficient to imply consent. The Supreme Court has found implied consent only when the parties were "made aware of the need for consent and the right to refuse it." *Roell*, 538 U.S. at 590. A district judge or magistrate judge may advise the parties of the availability of a magistrate judge, "but in so doing," the judge "*shall* also advise the parties that they are free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2) (emphasis added). Neither the district judge nor the magistrate judge told the parties that they had a right to proceed before a district judge when the jurors had questions or when a party had objections to the verdict form. When the parties

22-12936                Opinion of the Court                13

are not made aware of the need for consent and their right to refuse it, consent cannot be implied.

TB Food finally argues that it was harmless error for the magistrate judge to preside over portions of jury deliberations. But that argument is foreclosed by our precedent. *See Thomas v. Whitworth*, 136 F.3d 756, 761 (11th Cir. 1998). "[I]t can never be genuinely 'harmless' for a litigant . . . to be compelled to try some or all his case before a non-Article III judicial officer not entitled to exercise the power of an Article III judge." *Id.*

## IV. CONCLUSION

We **VACATE** the judgment, **REMAND** for a new trial, and **DISMISS** the cross-appeal as moot.

22-12936                    JORDAN, J., Concurring                    1

JORDAN, Circuit Judge, Concurring.

I agree with the court that the judgment must be vacated because, under our current precedent, the defendants never consented to the magistrate judge answering questions from the jury and resolving objections to the verdict. Although I join the court's opinion, I write separately to discuss our conflicting civil and criminal decisions dealing with forfeited challenges to the participation of magistrate judges.

## I.

With the parties' consent, a magistrate judge is statutorily authorized to preside over a civil case, with or without a jury, and enter final judgment. *See* 28 U.S.C. § 636(c)(1). When a magistrate judge is "designated" to exercise jurisdiction in a civil case, "the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction," and the "decision of the parties shall be communicated to the clerk of court. . . . Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent." § 636(c)(2). *See also* Fed. R. Civ. P. 73(b)(1). The district court or the magistrate judge may thereafter advise the parties "of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences." § 636(c)(2). In a case like this one, where the need for a magistrate judge to preside arises at the end of a trial, the clerk of court's advance notification mechanism may be unavailable or unfeasible.

We have ruled that § 636(c) is constitutional under Article III because it requires consent and because the district court retains sufficient control over the magistrate judge. *See Sinclair v. Wainright*, 814 F.2d 1516, 1519 (11th Cir. 1987) (agreeing with nine other circuits on the issue). Consent, therefore, has constitutional significance. *See Wellness Int'l Net., Ltd. v. Sharif*, 575 U.S. 665, 674–78 (2015); 12 Richard L. Marcus, Fed. Prac. & Proc. § 3071.1 (3d ed. & April 2023 update).

The Supreme Court has held that a party can waive or forfeit an Article III challenge to the participation of a magistrate judge in a trial by consenting (waiver) or by not objecting in a timely manner (forfeiture). I discuss waiver first and then move on to forfeiture.

"The entitlement to an Article III adjudicator is 'a personal right' and thus ordinarily 'subject to waiver[.]'" *Wellness Int'l Net., Ltd.*, 575 U.S. at 678 (internal citations and some internal quotation marks omitted). Consent to the participation of a magistrate judge, moreover, can sometimes be implied. *See Roell v. Withrow*, 538 U.S. 580, 590 (2003) (consent may be implied from the parties' conduct when "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the magistrate judge"). *See also Wellness Int'l Net., Ltd.*, 575 U.S. at 684 ("Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent[.]"). And consent can be provided by a party's counsel. *See Gonzalez v.*

22-12936                JORDAN, J., Concurring                3

*United States*, 553 U.S. 242, 250 (2008) ("[W]e conclude that express consent by counsel suffices to permit a magistrate judge to preside over jury selection in a felony trial, pursuant to the authorization in [28 U.S.C.] § 636(b)(3).").

Just as a party may waive the right to an Article III adjudicator, it may forfeit an objection to the participation of a magistrate judge. For example, a "defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Peretz v. United States*, 501 U.S. 923, 936 (1991).

In *Peretz*, a felony criminal case, the district court and the magistrate judge asked the attorneys for the government and the defendant in open court whether their clients consented to have the magistrate judge conduct jury selection. Both times the attorneys answered affirmatively. *See id.* at 925. After he was convicted, the defendant appealed on the ground that under Article III the magistrate judge did not have the authority to preside over jury selection. The Supreme Court affirmed the conviction. Although the parties apparently were not told that they had the right to refuse consent, and although they were not given the opportunity to give or refuse consent anonymously, the Court explained that a "defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Id.* at 936. The Court then concluded that "permitting a magistrate to conduct the *voir dire* in a felony trial when the defendant raises no objection is entirely faithful to the

congressional purpose in enacting and amending the Federal Magistrates Act." *Id.* at 940.[1]

Given that the right to an Article III adjudicator can be waived or forfeited, the unauthorized participation of a magistrate judge in a civil case is not jurisdictional in the subject-matter sense. *See, e.g., United States v. Finnesy*, 975 F.3d 675, 683 (10th Cir. 2020) (explaining that "the term 'jurisdiction,' when employed by courts in reference to a magistrate judge's authority, is not used in the strict sense of subject-matter jurisdiction"). It is true, of course, that "Article III also serves a structural purpose, 'barring congressional attempts to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating constitutional courts and thereby prevent[ing] the encroachment or aggrandizement of one branch at the expense of the other.' But allowing Article I adjudicators to decide claims submitted to them by consent does not offend the separation of powers so long as Article III courts retain supervisory authority over the process." *Id.* (internal citations and some internal quotation marks omitted).

It seems to me that under *Peretz*—which involved more weighty Article III considerations not present here—the parties' express consent to the magistrate judge taking the verdict was

---

[1] We have characterized *Peretz* as a case in which the defendant himself expressly consented to the magistrate judge presiding over jury selection. *See United States v. Maragh*, 189 F.3d 1315, 1316 (11th Cir. 1999) (on rehearing). But that is a misreading of *Peretz*. The defendant's attorney stated that his client consented, but no one ever personally asked the defendant if he did in fact consent. *See Peretz*, 501 U.S. at 925.

22-12936                JORDAN, J., Concurring                5

sufficient to allow him to carry out that task. In any event, there was no legal problem with respect to the taking of the verdict because the "mere acceptance of a jury verdict and the polling of the jury constitute no more than ministerial tasks that a magistrate judge may properly perform[.]" *United States v. Desir*, 257 F.3d 1233, 1238 (11th Cir. 2001).

## II.

As noted, I agree with the majority that we must set aside the judgment. Under our decisions in *Fowler v. Jones*, 899 F.2d 1088, 1092–93 (11th Cir. 1990), and *Thomas v. Whitworth*, 136 F.3d 756, 763 (11th Cir. 1998), the magistrate judge went beyond what the parties had agreed to—he answered six questions from the jury and resolved the defendants' objections to the verdict. The defendants were never asked to give their approval to the magistrate judge doing these things, and therefore never consented. *See Glover v. Alabama Bd. of Corrections*, 660 F.2d 120, 124 (5th Cir. Unit B Oct. 26, 1981) (explaining that "fundamental reasons . . . require us to construe narrowly the consent of the parties").[2]

In *Fowler*, we exercised plenary review as to the contention that the magistrate judge lacked jurisdiction to preside over a civil trial without the appellant's consent. In that case the magistrate

---

[2] *Glover* is binding under *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982). *But cf. United States v. Mendoza-Lopez*, 338 F.3d 1153, 1158 (10th Cir. 2003) (by consenting to have the magistrate judge accept the jury verdict, the defendant also "consented to the magistrate judge's handling of the deliberating jury unless a need arose to consult the district judge").

6                      JORDAN, J., Concurring                    22-12936

judge had the district judge sitting next to him during the trial and purported to act as the latter's mouthpiece.  Although the appellant did not object to this arrangement below, we rejected the appellees' argument that this failure constituted waiver: "[F]ailure to object to th[is] arrangement is no substitute for the express consent required if we find that the magistrate judge, and not the district judge, presided over the trial." *Fowler*, 899 F.2d at 1092 (relying on *Hall v. Sharpe*, 812 F.2d 644, 649 (11th Cir. 1987)). On the merits, we held that the magistrate judge had effectively presided over the trial and that this constituted reversible error.  *See id.* at 1093.  Because *Fowler* is a civil case, and is the decision most directly on point, the majority correctly conducts *de novo* review and orders vacatur of the judgment.  *See also Rembert v. Apfel*, 213 F.3d 1331, 1334 (11th Cir. 2000) (explaining, before *Roell* and *Wellness International Network*, that "[f]ailure to object is not equal to consent").[3]

The majority also properly does not engage in harmless error review.  Our earliest civil case on the issue, *Thomas*, rejected the notion that the improper participation by a magistrate judge could be subject to such review.  *See Thomas*, 136 F.3d at 763 ("[T]he concept of harmless error cannot be used to sustain the underlying judgment, since that judgment was rendered by a jury whose selection was supervised by a magistrate judge who lacked the authority to undertake the task designated to him by the district court.").

---

[3] *Fowler* predated *Peretz*, *Roell*, and *Wellness International Network*, but no one has argued that those Supreme Court cases abrogated *Fowler*.  In the absence of adversarial briefing, I assume that *Fowler* remains binding.

22-12936              JORDAN, J., Concurring                    7

But *Thomas* is not faithful to the federal provisions mandating harmless error review in civil cases. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Federal courts cannot use their supervisory powers to ignore the harmless error standard required in criminal cases, *see Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1987) (holding that a "federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)"), and that same prohibition applies with respect to civil cases. A per se rule of vacatur is simply inconsistent with the commands of § 2111 and Rule 61.

## III.

The general rule is that "[i]f a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited. . . . If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed." *Puckett v. United States*, 556 U.S. 129, 134 (2009). If we were not bound by cases like *Fowler*

8                    JORDAN, J., Concurring                    22-12936

and *Thomas*, I would not conduct plenary review and would reject a per se rule of vacatur. [4]

### A.

When the jury asked questions during deliberations, the defendants did not object to the magistrate judge responding to them. Nor did they request that the deliberations be paused so that the questions could be answered by the district judge upon his return. And when the jury returned its verdict, and the defendants lodged an objection to it, they again did not object to the magistrate judge resolving their objection.

Under some of our criminal cases, the defendants' failure to object might have constituted a waiver or forfeiture of the right (statutory or constitutional) to an Article III judge. Or the magistrate judge's participation might have been subject to harmless error review. *See United States v. Brantley*, 723 F.2d 1429, 1443 (11th Cir. 1984) (holding that defendants in a criminal case "waived the requirement" to have an Article III judge rule on objections and instructions to the jury because they failed to object to the

---

[4] We have held that, absent the parties' consent, a magistrate judge lacks jurisdiction to enter final judgment in civil case. *See, e.g., McNab v. J & J Marine, Inc.*, 240 F.3d 1326, 1328 (11th Cir. 2001). But here the magistrate judge did not enter final judgment, and the issue on appeal concerns only his participation during the jury deliberations and the return of the verdict. We are not, therefore, dealing with a matter of jurisdictional significance. *Cf. Burton v. Schamp*, 25 F.4th 198, 203–04, 206–07 (3d Cir. 2022) (where none of the defendants consented, the magistrate judge lacked jurisdiction to dismiss the plaintiff's complaint with prejudice).

magistrate judge giving a supplemental instruction without consulting the parties, and concluding that, in any event, any error was harmless because the instruction was correct); *United States v. Boswell*, 565 F.2d 1338, 1341–42 (5th Cir. 1978) (holding that having a magistrate judge presiding over closing arguments in a criminal case, without the parties' consent, was harmless error because his rulings and responses to objections during the arguments "could not have misled the jury").

Even if the defendants' failure to object did not constitute waiver, *see, e.g., United States v. Lewis*, 492 F.3d 1219, 1221–22 (11th Cir. 2007) (explaining that failure to assert a right constitutes forfeiture and not waiver), some of our criminal cases have applied plain error review when there was no objection below to the participation of the magistrate judge. *See United States v. Schultz*, 565 F.3d 1353, 1356 (11th Cir. 2009) ("Because Schultz did not raise his challenge to the magistrate judge's authority in the district court, however, we review it only for plain error."); *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003) ("Freixas' argument concerning the magistrate judge's authority is advanced for the first time on appeal, and accordingly we review it only for plain error."). Admittedly our criminal cases are not uniform in this respect, and some reject the use of the plain error standard. *See Maragh*, 189 F.3d at 1316–18. But it is a fair question whether cases like *Maragh* are still good law after our recent decision in *United States v. Steiger*, 99 F.4th 1316, 1322 (11th Cir. 2024) (en banc) ("[W]e won't reverse for any error (even an outcome-changing one) when the party claiming error did not object below unless the error is 'plain'—meaning that it

is obvious and it affected substantial rights—and it undermined the fairness of the proceeding.").[5]

From my perspective, the defendants' failure to lodge any objection whatsoever below should be treated as a forfeiture of the alleged statutory error. That failure, moreover, should trigger application of what we call the civil plain error standard. We have described that standard in various ways, but the unifying theme is that correction of a forfeited civil error is not automatic but discretionary. *See, e.g., Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) ("In an exceptional civil case, we might entertain the objection by noticing plain error . . . . Under the civil plain error standard, we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.") (citations and internal quotation marks omitted); *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) ("First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration

---

[5] A number of our sister circuits also apply plain error review in criminal cases where a magistrate judge's participation is challenged for the first time on appeal. *See, e.g., Finnesy*, 953 F.3d at 682–84; *United States v. Gonzalez*, 483 F.3d 390, 392 (5th Cir. 2007); *United States v. Torres*, 258 F.3d 791, 794 (8th Cir. 2001); *United States v. Jones*, 938 F.2d 737, 744 (7th Cir. 1991); *United States v. Rivera-Sola*, 713 F.2d 866, 874 (1st Cir. 1983).

by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.").

**B.**

The defendants' failure to make contemporaneous objections to the magistrate judge's participation during the jury's deliberations and the return of the verdict may have been understandable. A trial can be fast-moving, and things may not always be clear or apparent in the fog of legal battle. But the defendants had ample opportunity to object later.

After the verdict was returned and filed, the defendants filed substantial post-trial motions seeking judgment as a matter of law or a new trial on numerous grounds. *See* D.E. 483, 484, 530, 543. By my count, the defendants made at least 10 separate arguments in support of their motions. But one argument was conspicuously missing—the contention that the magistrate judge had exceeded his authority by responding to jury questions and resolving an objection to the jury verdict without proper consent. Also missing from the defendants' post-trial motions was any argument that the magistrate judge's responses to the jury questions and resolution of the objection to the jury verdict were substantively incorrect.

During oral argument, appellate counsel for the defendants explained that his clients did not lodge any objections to the

magistrate judge's participation in their post-trial motions because they were not aware that they had a right to refuse consent and a right to demand the presence of an Article III judge during deliberations. *See* Oral Argument Audio at 37:20. Yet we do not generally forgive the forfeiture of a claim just because a party claims ignorance of the law, especially when the party is represented by counsel. *See, e.g., United States v. Ramirez*, 537 F.3d 1075, 1085 (9th Cir. 2008) ("Regardless of whether Ramirez's counsel chose not to object for a strategic reason or because of an ignorance of the law, Ramirez is bound by the decision of his counsel not to object."). Indeed, ignorance is sometimes the very reason for the forfeiture of a legal objection. *See, e.g., United States v. Escalante-Reyes*, 689 F.3d 415, 421–22 (5th Cir. 2012) (en banc) ("Indeed, some (maybe most) of the time, the failure to object is the product of inadvertence, ignorance, or lack of time to reflect."); *Govt. of the Virgin Islands v. Rosa*, 399 F.3d 283, 291 (3d Cir. 2005) (finding forfeiture because "the failure to object [by counsel], and moreover his agreement on at least three occasions to the erroneous jury instruction, stemmed from the circumstance that he was unaware of the correct rule of law or, if aware of it, did not realize that the intent instruction misstated it").

I do not, of course, know the exact reason for the defendants' failure to object to the magistrate judge's participation in the post-trial motions, but I have a suspicion. Had the defendants objected, I am confident that the district court would have held an evidentiary hearing to figure out the extent and limits (if any) of the defendants' consent to the magistrate judge's participation. At

that hearing, the defendants and their trial counsel might have had to explain, under oath, what they knew, discussed, and understood about their right to refuse consent and the extent of their consent. And only heaven knows what that testimony, subject to cross-examination, would have revealed. *See Wellness Int'l Net., Ltd.*, 575 U.S. at 685 (explaining that determining whether there was consent to a bankruptcy judge's resolution of a certain claim "require[d] a deeply factbound analysis of the procedural history unique to this protracted litigation").

By objecting to the magistrate judge's participation for the first time in their initial brief on appeal, the defendants avoided what might have been a problematic evidentiary hearing. If that is what happened, it does not seem right to me that the issue they failed to raise below is now being reviewed *de novo* on appeal without any plain error or harmless error inquiry. *Cf. Puckett*, 556 U.S. at 134 ("[T]he contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.") (internal quotation marks omitted).

## IV.

We recently convened en banc to reject our previous per se rule of reversal in criminal cases where the district court fails to explain its chosen sentence. We held that, if there is no contemporaneous objection to the district court's failure, plain error review results. *See Steiger*, 99 F. 4th at 1322. Hopefully one day we will

14                          JORDAN, J., Concurring                          22-12936

take the same approach to forfeited challenges to the participation of a magistrate judge in both civil and criminal cases.